REVISED MAY 1, 2008
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 9, 2008

Charles R. Fulbruge III
Clerk

No. 06-51383

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JESUS IGNACIO RAMOS-CARDENAS; JORGE ALBERTO
AGUIRRE-MELECIO; GUILLERMO LOPEZ-QUEZADA;
ROMAN ARGUELLES-AGUIRRE; FRANCISCO MELECIO-ARGUELLES;
RAMON OBREGON-LOPEZ; JOSE MELECIO-ARGUELLES;
JUAN PEDRO HURTADO-GARCIA; GABRIEL MELECIO-ARGUELLES;
FRANCISCO JAVIER AGUIRRE-MELECIO; JAIME
SUAREZ-DE LA ROSA

Defendants - Appellants

Appeals from the United States District Court
for the Western District of Texas

Before KING, STEWART, and PRADO, Circuit Judges.

PER CURIAM:

Defendants-appellants Jesus Ignacio Ramos-Cardenas, Jorge Alberto
Aguirre-Melecio, Guillermo Lopez-Quezada, Roman Arguelles-Aguirre, Francisco
Melecio-Arguelles, Ramon Obregon-Lopez, Jose Melecio-Arguelles, Juan Pedro
Hurtado-Garcia, Gabriel Melecio-Arguelles, Francisco Javier Aguirre-Melecio,
and Jaime Suarez-De La Rosa appeal their convictions for possession of one
hundred or more kilograms of marijuana with intent to distribute and conspiracy

to possess marijuana with intent to distribute. For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of November 30, 2005, United States Border Patrol Agent Santiago Gonzalez, Jr., spotted two groups of individuals—among them the appellants in this case—walking northbound on U.S. Highway 90 in southwest Texas. Agent Gonzalez's vantage point was about a mile away, and he was using a forward looking infrared scope ("FLIR"), an imaging device that detects body heat in the dark. He spotted the first group, consisting of nine individuals, at about 3:30 a.m. Agent Gonzalez saw these individuals cross a fence and pass what appeared to be two to four backpacks over it, although the limitations of infrared vision prevented Agent Gonzalez from clearly observing the precise number or type of bags that were present. He also saw what appeared to be one of the individuals putting on a backpack. This first group sat down in a brushy area near a roadside park. The second group, consisting of four individuals, appeared at about 5:00 a.m. Due to the effect of the rough terrain on the FLIR, Agent Gonzalez could not tell whether these individuals were also carrying bags. It was around this time that Agent Gonzalez alerted other agents, who came to the scene.

Shortly after 7:00 a.m., Agent Gonzalez saw one of the men, Francisco Alejandro Huerta-Adriano, emerge from the brush, walk southbound, and approach a white Ford Expedition SUV driven by Daniel Bennett Diaz. Huerta-Adriano got into the driver's seat of the SUV, and Diaz moved to the passenger seat. Twelve men then approached the SUV in short succession before the SUV drove off. While there was not enough daylight for Agent Gonzalez to see details using the FLIR, Diaz later testified that it was light enough for him to see the faces of the twelve men as they loaded bags of marijuana into the SUV.

After the SUV had been loaded, the agents who had been summoned by Agent Gonzalez pursued the SUV and chased down the twelve men who remained on foot. Agents Rush Carter and John Pierce arrested the men on foot, and Agent Carter later testified that it was then light enough for him to see and recognize individual faces. Agents Shane Jahn and Juan Camacho apprehended Diaz and Huerta-Adriano after the SUV careened off the road and through a fence. The SUV contained approximately 197.54 kilograms of marijuana, packed in potato sacks.[1]

All fourteen men were taken into custody and transferred to Drug Enforcement Administration officers. Officer Jose Rendon photographed the men, read them their rights, and took their personal histories. Two men, Gabriel Melecio-Arguelles and Guillermo Antelmo Quintana-Beltran (a defendant below who is not a party to this appeal), gave inculpatory statements to the authorities. All fourteen men were later indicted on charges of possession of one hundred or more kilograms of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. Diaz and Huerta-Adriano pleaded guilty before trial, which, for the remaining twelve defendants, began on May 16, 2006.

At trial, Diaz testified for the government and identified the defendants as the individuals who had loaded the marijuana into the SUV. Diaz also testified that he had entered into a plea agreement with the government, and

---

[1] Diaz clarified in his testimony at trial that the marijuana was packaged in knapsacks. Knapsacks, he explained, are potato sacks that are capable of being carried with or without straps. Twenty-two wrapped bundles of marijuana—carried in at least eleven knapsacks—were recovered from the SUV. Although whether the knapsacks had straps was disputed, the evidence showed that, at the very least, they had holes suitable for straps. Moreover, a knapsack can be carried on a person's back by slinging it over one shoulder or by holding it with both hands over both shoulders.

that he hoped to receive a reduced sentence because of his assistance.[2] Agent Gonzalez, Officer Rendon, and other agents and officers related the events leading up to and including the apprehension of the defendants and their transfer to DEA custody.

In addition, Officers Mark Arredondo and Ronaldo Saenz testified to Gabriel Melecio-Arguelles and Quintana-Beltran's post-arrest statements, as these confessing defendants did not testify. Before trial, the remaining nonconfessing defendants filed a motion to sever their cases from the two who had given statements to the authorities. The district court denied this motion, but granted a motion in limine to exclude the statements as to the nonconfessing defendants. A subsequent motion to suppress the statements entirely was denied. Instead, each statement was redacted so as to avoid implicating anyone other than the speaker, and Officers Arredondo and Saenz were instructed not to use any plural pronouns, such as "we" or "they," when relating the statements to the jury. However, Officer Arredondo twice testified to Gabriel Melecio-Arguelles's statement in the plural, stating that Gabriel Melecio-Arguelles told him that "he arrived in Acuna a week before they crossed." (Emphasis added). This drew objections from the other defendants, and the district court cautioned the jury to disregard that portion of Officer Arredondo's testimony. The other defendants moved for a mistrial, but this motion was denied, and testimony continued without incident. The district court also included an instruction in the general charge that any out-of-court statement claimed to have been made by a defendant "should not be considered in any way whatsoever as evidence with

---

[2] In addition, Diaz testified to an extensive criminal history, including two burglary convictions and a conviction for aggravated sexual assault of a child. He also admitted that he had not been truthful with the authorities at the outset of the case. (He had initially told the agents that he had been kidnapped at gunpoint by the driver of the SUV.) Finally, Diaz testified that he had previously transported two loads of marijuana and four loads of cocaine from Mexico into the United States.

respect to any other defendant on trial." At the close of the government's case, the district court denied the defendants' motion for a judgment of acquittal.

During deliberations, the jury sent out a note to the district court asking, "Why is Daniel Bennett Diaz the only name on the indictment and not the names of the defendants?" Following a discussion with all counsel about how to respond to the note,[3] the district court provided the jury with the indictment listing all the defendants' names, accompanied by the following instruction:

> When an indictment is prepared, all named defendants appear in the style or the name of the case, such as United States of America versus John Doe number 1, John Doe number 2, John Doe number 3, and [ ] Jane Doe number 4.

> The courts often shorten this title so that it reads United States of America against John Doe number 1, et al. "Et al." represents the other defendants in the indictment.

> In this case, Daniel Bennett Diaz was the first defendant listed in the indictment. His guilt has already been established by virtue of his plea of guilty.

> The second defendant in the indictment, Francisco Alejandro Huerta-Adriano, had also pled guilty.

> The fact that Mr. Diaz's name appears [ ] on the name of the case should not affect your judgment in any way. Your job is to determine whether the Government has proved beyond a reasonable doubt that Defendants 3 through 14, as listed in the indictment, committed the crimes charged in the indictment . . . .

---

[3] One suggestion, which was objected to by Ramos-Cardenas, was to provide the jury with a copy of the indictment listing the names of all of the men who had been indicted, but crossing out the names of Diaz and Huerta-Adriano, who had pleaded guilty.

Only Gabriel Melecio-Arguelles objected to this solution. In its general charge to the jury, the district court also included an instruction that an accomplice's guilty plea "is not evidence of the guilt of any other person."

On May 19, 2006, after about three hours of deliberation, the jury returned guilty verdicts for all of the defendants on both counts charged in the indictment. The district court imposed sentences to run concurrently for both counts ranging from sixty to sixty-three months in prison, with either four or five years of supervised release. Each defendant was also charged a $200 special assessment. The district court entered judgments as to each defendant individually, and each defendant herein filed a timely notice of appeal.

## II. DISCUSSION

### A.

The following defendants challenge their convictions on sufficiency of the evidence grounds: Ramon Obregon-Lopez, Francisco Melecio-Arguelles, Guillermo Lopez-Quezada, Jorge Alberto Aguirre-Melecio, Roman Arguelles-Aguirre, Jaime Suarez-De La Rosa, Francisco Javier Aguirre-Melecio, and Jesus Ignacio Ramos-Cardenas. In addition, Juan Pedro Hurtado-Garcia and Jose Melecio-Arguelles argue that the district court erroneously denied their motions for a new trial because, they contend, the verdict was against the weight of the evidence.

In order to prove possession of marijuana with intent to distribute, the government must prove beyond a reasonable doubt the (1) knowing possession (2) of marijuana (3) with intent to distribute. United States v. Resio-Trejo, 45 F.3d 907, 911 (5th Cir. 1995). Conspiracy to possess marijuana with intent to distribute requires proof beyond a reasonable doubt additionally of (1) the existence of an agreement to possess with intent to distribute; (2) knowledge of the agreement; and (3) voluntary participation in the agreement. United States v. Rodriguez-Mireles, 896 F.2d 890, 892 (5th Cir. 1990). Possession may be

actual or constructive, may be joint among several defendants, and may be proven by direct or circumstantial evidence. See United States v. Vergara, 687 F.2d 57, 61 (5th Cir. 1982). Further, the intent to distribute may be inferred from the possession of a large quantity of the drug. United States v. Prieto-Trejas, 779 F.2d 1098, 1101 (5th Cir. 1986).

A district court's decision to grant or deny a motion for a new trial is reviewed for a clear abuse of discretion. United States v. Robertson, 110 F.3d 1113, 1116 (5th Cir. 1997). "The trial judge may weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial." Id. at 1117. But the "court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." Id. at 1118. Rather, the "evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." Id. (citations omitted).

When reviewing the sufficiency of the evidence for the purposes of a motion for acquittal, our task is merely to "determine whether . . . a rational jury could have found the essential elements of the offense beyond a reasonable doubt. We are concerned only with whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence." United States v. Frye, 489 F.3d 201, 207 (5th Cir. 2007) (internal citations and quotation marks omitted). To this end, we "review the evidence and the reasonable inferences which flow therefrom in the light most favorable to the verdict." Id. (internal quotation marks omitted). In reviewing the sufficiency of the evidence, we do not weigh evidence or assess the credibility of witnesses, and the jury is free to choose among reasonable constructions of the evidence. United States v. Ibarra, 286 F.3d 795, 797 (5th Cir. 2002). It "is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." Resio-Trejo, 45 F.3d at

911 (internal quotation marks omitted). Nonetheless, the government must do more than show that the defendants "could have been guilty." *United States v. Sacerio*, 952 F.2d 860, 863 (5th Cir. 1992). Therefore, if "the evidence tends to give equal or nearly equal circumstantial support to guilt and to innocence, . . . reversal is required . . . ." *United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir. 1998) (internal quotation marks omitted).

In this case, the evidence shows that the defendants were observed by law enforcement officials continuously from the time they walked to the roadside park on Highway 90 through the time of their apprehension, arrest, and booking. Diaz positively identified the defendants as the individuals that loaded the knapsacks of marijuana into the car. And, although Diaz may not be an ideal witness, his testimony that at 7:00 a.m. it was light enough to see the faces of the men who were loading marijuana into the SUV was corroborated by that of Agent Carter, who stated that at "that point the daylight was good." Further, the jury heard all of the impeachment evidence, yet still apparently credited Diaz's testimony in this case.

Agent Gonzalez testified that he could see two to four packs through the FLIR, which is intended to detect body heat, not necessarily baggage. He also testified that there may have been more bundles than he could discern using the FLIR. Agent Gonzalez's testimony is corroborated by that of Diaz, who testified that he saw the defendants loading the knapsacks into the SUV, and also by the photograph of approximately eleven knapsacks of marijuana recovered from the SUV. This evidence, combined with the fact that the defendants were under constant surveillance by law enforcement officials from the time that they were spotted on Highway 90 through the time of their arrest, is sufficient to support the jury's verdict in this case. The district court did not err in determining that the weight of the evidence supported the jury's verdict. Thus, we affirm the district court's denial of the motions for acquittal and motions for a new trial.

B.

Some of the defendants also argue that their rights under the Sixth Amendment's Confrontation Clause were violated by admission of the post-arrest statements given by codefendants Gabriel Melecio-Arguelles and Quintana-Beltran, even though the jury was instructed that any out-of-court statement could only be considered as evidence against the speaker, and not the other defendants.[4] "Alleged violations of the Confrontation Clause of the Sixth Amendment are reviewed de novo, but are subject to a harmless error analysis."[5] United States v. Jimenez, 464 F.3d 555, 558 (5th Cir. 2006) (quoting United States v. Bell, 367 F.3d 452, 465 (5th Cir. 2004)) (internal brackets omitted).

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with witnesses against him . . . ." U.S. CONST. amend. VI. The Supreme Court has explained that "the principal evil at which the Confrontation Clause was directed was the . . . use of

[4] Specifically, the following defendants challenge the district court's denial of their objections to the admission of the out-of-court statements given by Gabriel Melecio-Arguelles and Quintana-Beltran, as well as the district court's denial of their subsequent motions for a mistrial, or, in the alternative, a new trial: Juan Pedro Hurtado-Garcia, Francisco Melecio-Arguelles, Guillermo Lopez-Quezada, Jose Melecio-Arguelles, Jorge Alberto Aguirre-Melecio, Roman Arguelles-Aguirre, Jaime Suarez-De La Rosa, Francisco Javier Aguirre-Melecio, and Jesus Ingacio Ramos-Cardenas. In addition, the following defendants challenge the district court's denial of their pretrial motions for severance, which were based on the theory that they would be prejudiced if tried with the confessing defendants without being able to cross-examine them: Jaime Suarez-De La Rosa, Juan Pedro Hurtado-Garcia, Jose Melecio-Arguelles, and Jorge Alberto Aguirre-Melecio. We find no merit in Obregon-Lopez's argument that the district court abused its discretion in failing to sever the cases of the defendants based on their hometowns in Mexico.

[5] We recognize that some of our cases indicate that the proper standard of review for possible "Bruton violations" is abuse of discretion ("Bruton" refers to Bruton v. United States, 391 U.S. 123 (1968), a Confrontation Clause case discussed herein). E.g., United States v. Walker, 148 F.3d 518, 522 (5th Cir. 1998); United States v. Fletcher, 121 F.3d 187, 197 (5th Cir. 1997); United States v. Beaumont, 972 F.2d 91, 95 (5th Cir. 1992). The confusion here seems to stem from the fact that we employ an abuse of discretion standard when reviewing denials of motions for severance, and it is common for defendants to seek a severance on the ground that a codefendant has given a statement that inculpates them. See United States v. Basey, 816 F.2d 980, 1004 (5th Cir. 1987).

ex parte communications as evidence against the accused." Crawford v. Washington, 541 U.S. 36, 50 (2004). Thus, in the context of a multi-defendant trial, "the pretrial confession of one [defendant] cannot be admitted against the other[s] unless the confessing defendant takes the stand." Richardson v. Marsh, 481 U.S. 200, 206 (1987).

Here, though, the jury was instructed not to consider the post-arrest statements of Gabriel Melecio-Arguelles and Quintana-Beltran as evidence against any defendant other than the speaker. "Ordinarily, a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a codefendant"; thus, the general rule is that when a codefendant's prior statement is admitted with an instruction that it be considered as evidence against only the codefendant, and not the other defendants, the other defendants have not suffered a violation of their Confrontation Clause rights. Id. In Bruton v. Smith, however, the Supreme Court recognized an exception to this rule for codefendant statements that "expressly implicat[e]" another defendant. 391 U.S. 123, 124 n.1 (1968). The Court found that there is too great a risk that the jury will consider "the powerfully incriminating extrajudicial statements of a codefendant" as evidence of the other defendant's guilt, even when a limiting instruction is given. Id. at 135–36.

The Supreme Court has twice considered the scope of Bruton. In Richardson v. Marsh, the Court determined that a defendant's Confrontation Clause rights were not violated by the admission of a codefendant's confession that was redacted to omit any reference to the other defendant, as well as any indication that anyone other than the codefendant and an identified third party (who was not on trial) participated in the crime. 481 U.S. at 202–03. As to the other defendant, the codefendant's confession in Richardson "was not incriminating on its face, and became so only when linked with evidence

10

introduced later at trial . . . ." Id. at 208. The Court reasoned that when a codefendant's statement only gives rise to this type of "inferential incrimination," it is less likely that the jury will be unable to follow the instruction to disregard it in assessing the defendant's guilt. Id.

Next, in Gray v. Maryland, the Court determined that a defendant's Confrontation Clause rights were violated by the admission of a codefendant's confession that was redacted by replacing the defendant's name with blank spaces and, when read into evidence at trial, the word "deleted" or "deletion." 523 U.S. 185, 188 (1998). The Court explained that "a jury will often react similarly to an unredacted confession and a confession redacted in this way, for the jury will often realize that the confession refers specifically to the defendant[,]" and warned that "the obvious deletion may well call the jurors' attention specially to the removed name." Id. at 193. The Court conceded that the jury would have had to use inference to connect the redacted statement to the defendant, and further conceded that Richardson had "placed outside the scope of Bruton's rule those statements that incriminate inferentially[,]" but distinguished Richardson—which, the Court explained, "must depend in significant part upon the kind of, not the simple fact of, inference"—on the basis that the accusation made by the redacted confession was "more vivid than inferential incrimination, and hence more difficult to thrust out of mind." Id. at 195–96 (internal quotation marks omitted).

At issue here are the post-arrest statements given by Gabriel Melecio-Arguelles and Quintana-Beltran. The district court ordered that these statements be redacted to eliminate all reference to defendants other than the speaker, and the jury was instructed not to consider the statements as evidence against any defendant other than the speaker. We think it clear that the admission of such statements into evidence poses no threat to the other defendants' Confrontation Clause rights under Richardson. However, when the

substance of Melecio-Arguelles's statement was related to the jury, Officer Arredondo used the pronoun "they." Specifically, Officer Arredondo twice stated that Gabriel Melecio-Arguelles admitted to him that "they crossed." (From the context, it is clear that the reference is to crossing the Rio Grande from Mexico into Texas.) The question remains whether this testimony constituted a violation of the Confrontation Clause.

We first note that Officer Arredondo corrected his apparently inadvertent misstatement and did not use any plural pronouns in his remaining testimony. We note further that the statement "they crossed" uses an indefinite pronoun and does not make any direct reference to the other defendants. This is not the same type of obvious redaction that the Gray Court feared might cause a jury to conclude that a specific reference to other defendants was intended. In addition, the statement that "they crossed" the Rio Grande, is not, in and of itself, facially incriminating. Even if "they" is taken to refer to the other defendants, these defendants were not charged with illegal entry or importation, so the statement that "they crossed" the river does not directly implicate them in a charged crime.

It is true, however, that the statement "they crossed" might serve to incriminate the other defendants by inference. The government's theory of the case was that thirteen individuals transported marijuana across the United States–Mexico border in the early morning hours of November 30, 2005, and delivered it to Diaz at the roadside park. Within this context, Gabriel Melecio-Arguelles's statement incriminates the other defendants if certain inferences are drawn: that the "they" who crossed the river with Gabriel Melecio-Arguelles were engaged in the transportation of marijuana, and that "they" referred to the other defendants.

Nonetheless, we do not think that the use of the word "they" two times in Officer Arredondo's testimony gives rise to the same kind of inferences that the Court found offensive to the Confrontation Clause in Gray. There, the Court

took issue with statements "that, despite redaction, obviously refer[red] directly to someone, often obviously the defendant, and which involve[d] inferences that a jury could ordinarily make immediately, even were the confession the very first item introduced at trial." Gray, 523 U.S. at 196. Here, though, the use of an indefinite pronoun does not so obviously refer to specific individuals, and we see nothing in the statement "they crossed" that gives rise to inferences so strong that they would be made immediately if the statement were the first item introduced at trial. The inferences here are more indirect, and the statement simply does not convey the same type of "vivid" accusation that the Court found troubling in Gray. Rather, this seems to be an instance where the statement does not offend the Confrontation Clause because it only becomes incriminating, if at all, "when linked with evidence introduced later at trial." Richardson, 481 U.S. at 208.

Furthermore, Gray itself suggests that the use of an indefinite pronoun such as "they" is acceptable in this type of situation. In Gray, the Court noted that additional redaction of a statement that uses blank spaces or the word "delete" is usually possible, and gave the following example:

> The witness who read the confession told the jury that the confession (among other things) said,
>     "Question: Who was in the group that beat Stacy?
>     "Answer: Me, deleted, deleted, and a few other guys."

> Why could the witness not, instead, have said:
>     "Question: Who was in the group that beat Stacy?
>     "Answer: Me and a few other guys."

Gray, 523 U.S. at 196. If the use of the indefinite phrase "a few other guys" in the above example (which, we note, directly implicates the "few other guys" in the crime charged) is acceptable under the Confrontation Clause, then we fail to see why it was not acceptable in this case to use the phrase "they crossed," which

13

is arguably more indefinite than "a few other guys" (in that it does not identify the gender of the other individuals) and does not directly implicate anyone in the crimes charged.[6]

We note that subsequent to its decisions in Bruton, Richardson, and Gray, the Supreme Court decided another Confrontation Clause case, Crawford v. Washington, which held that the Sixth Amendment bars the admission of testimonial hearsay against a criminal defendant unless the witness is unavailable and the defendant had a prior opportunity for cross-examination.[7] 541 U.S. at 68. Crawford involved the admission of an unavailable witness's out-of-court statement in a single-defendant trial, and thus did not speak directly to the issue before us. Id. at 38. However, while Crawford certainly prohibits the introduction of a codefendant's out-of-court testimonial statement against the other defendants in a multiple-defendant trial, it does not signal a departure from the rules governing the admittance of such a statement against the speaker-defendant himself, which continue to be provided by Bruton, Richardson, and Gray. See United States v. Vasilakos, 508 F.3d 401, 407–08 (6th Cir. 2007) (applying Bruton and finding no violation of the Confrontation Clause in the reading of a codefendant's redacted statement); United States v. Rodríguez–Durán, 507 F.3d 749,768–70 (1st Cir. 2007) (separately analyzing

---

[6] That is not to say that it would not have been preferable for Officer Arredondo to relate Melecio-Arguelles's statement entirely in the singular. This is undoubtedly the safer course, as codefendant statements that give absolutely no indication that anyone else participated in the crime are more likely to fall within the class of statements that do not offend the Confrontation Clause. See Richardson, 481 U.S. at 203. Repeated use of an indefinite pronoun may, in some circumstances, give rise to a Confrontation Clause violation. See United States v. Williams, 429 F.3d 767, 773–74 (8th Cir. 2005) (suggesting, but ultimately not deciding, that redacting a statement by substituting "someone" for the numerous references to the defendant's name may violate the Confrontation Clause).

[7] Crawford overruled Ohio v. Roberts, 448 U.S. 56 (1980), which conditioned the admission of hearsay evidence on whether it fell under a firmly rooted hearsay exception or was trustworthy. Crawford, 541 U.S. at 60 (citing Roberts, 448 U.S. at 66).

admission of an out-of-court statement for Bruton error and Crawford error); United States v. Williams, 429 F.3d 767, 773 n.2 (8th Cir. 2005) ("We note that Crawford did not overrule Bruton and its progeny . . . .") (citations omitted); United States v. Lung Fong Chen, 393 F.3d 139, 150 (2d Cir. 2004) ("[W]e see no indication that Crawford overrules Richardson or expands the holding of Bruton.").

## C.

Finally, some of the defendants argue that the district court erred in responding to the jury note during deliberations.[8]  The jury asked, "Why is Daniel Bennett Diaz the only name on the indictment and not the names of the defendants?"  Apparently the jury was referring not to the indictment, but to the jury instructions, which were styled "United States of America v. Daniel Bennett Diaz, et[] al."  In response, the district court submitted a copy of the indictment to the jury, along with a note explaining that the first two individuals listed on the indictment, Diaz and Huerta-Adriano, had pleaded guilty, and that the jury's job was to determine if the government had proved the guilt of the other defendants beyond a reasonable doubt.  Because Gabriel Melecio-Arguelles objected to the district court's response to the jury note, which can be considered a jury instruction, we review for abuse of discretion, subject to harmless error analysis.  United States v. Nguyen, 493 F.3d 613, 619, 622 (5th Cir. 2007).  For the defendants who did not object, we review for plain error.  United States v. Gray, 96 F.3d 769, 775 (5th Cir. 1996).  Regardless of what standard is used, we find no reversible error in the district court's response to the jury note.

The general rule is that "evidence about the conviction of a coconspirator is not admissible as substantive proof of the guilt of a defendant."  United States

---

[8] These defendants are Gabriel Melecio-Arguelles, Jose Melecio-Arguelles, Jorge Alberto Aguirre-Melecio, and Guillermo Lopez-Quezada.

v. Leach, 918 F.2d 464, 467 (5th Cir. 1990) (citations omitted).  That being said, it clearly was not error for the district court to state in the response to the jury note that Diaz had pleaded guilty, as this fact was already properly before the jury:  evidence of a testifying coconspirator's conviction is admissible (and commonly used) for impeachment purposes, and the fact of Diaz's plea was referenced by both the government and the defense while he was on the stand.  See id. at 467 & n.4; United States v. Baez, 703 F.2d 453, 455 (10th Cir. 1983) ("If the codefendant testifies, . . . either the government or the defense may elicit evidence of a guilty plea for the jury to consider in assessing the codefendant's credibility as a witness.").

The disclosure of Huerta-Adriano's guilty plea to the jury presents a more difficult question, as unlike Diaz, Huerta-Adriano did not testify at trial.  The defendants rely primarily on United States v. Hansen, 544 F.2d 778 (5th Cir. 1977), to argue that the disclosure of this plea was error.  In Hansen, we found reversible error where the district court informed the jury venire prior to voir dire that a codefendant had already pleaded guilty.  Id. at 779.  The codefendant had made his plea before the trial began and had never been seen by the prospective jury members, so "[t]here was no need to explain his absence."  Id. at 780.

We first note that Hansen is distinguishable from this case in several respects.  For one, the district court here was responding to a question from the jury during deliberations, and did not simply inject the issue of the coconspirator's plea into the proceedings on its own accord, as was the case in Hansen.  And though the jury note specifically named only Diaz, and not Huerta-Adriano, the district court no doubt anticipated that the jury would be confused by the presence of any name on the indictment that did not correspond to the defendants who were on trial, not just Diaz's.  See United States v. Johnson, 455 F.2d 311, 316 (5th Cir. 1972) (finding no error where "[t]he court was attempting

16

to satisfy the predictable confusion and curiosity of the jury when confronted with the fact that [a codefendant who had pleaded guilty] was indicted as the others had been but was not on trial . . . .").

An additional consideration is that unlike the codefendant in Hansen, Huerta-Adriano was not entirely absent from the trial. Rather, it was not until after voir dire was concluded, and shortly before the jury was seated, that Huerta-Adriano's attorney informed the district court (outside the presence of the jury) that Huerta-Adriano would be pleading guilty. We have "long recognized that in some instances it is necessary for a trial court to explain a co-defendant's absence." Hansen, 544 F.2d at 780. While the best course on such an occasion is undoubtedly "a simple explanation that the case [is] proceeding against the [other defendants] only and the jury should not be concerned with any other party," the district court's explanation here was preferable to "leav[ing] the jury full of curiosity, conjecture, and uncertainty." Id.

Notwithstanding these distinctions, we admit that we are troubled by the district court's disclosure of Huerta-Adriano's guilty plea to the jury. Ultimately, though, we decline to decide whether this was error, as the error, if any, was harmless. Even if a jury instruction was given in error, "we will not reverse if we determine, based on the entire record, that the challenged instruction could not have affected the outcome of the case." Nguyen, 493 F.3d at 623 (internal quotation marks omitted); see also United States v. Blevins, 960 F.2d 1252 (4th Cir. 1992) (invoking the harmless error doctrine where guilty pleas of non-testifying coconspirators were mentioned at trial). Here, there was substantial evidence of the defendants' guilt, as recounted earlier. In addition, the district court instructed the jury that the guilty plea of an alleged accomplice is not evidence of any other defendant's guilt. The "almost invariable assumption" is that jurors follow such instructions, Richardson, 481 U.S. at 206, and there is no reason to deviate from this general rule here. By the time the jury was

informed that Huerta-Adriano had pleaded guilty, it had already learned that another defendant had pleaded guilty (Diaz), and that two others had given inculpatory statements to the authorities (Gabriel Melecio-Arguelles and Quintana-Beltran). If we are to assume that the jury, in determining whether the other defendants were guilty, was able to follow the district court's instructions and disregard the fact that three defendants had already admitted their guilt in one form or another, we see no reason not to assume that the jury was also able to disregard the fact that a fourth defendant had pleaded guilty.[9]

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the defendants' convictions.

---

[9] We also note that because the jury was not informed of Huerta-Adriano's guilty plea until after the close of evidence and closing arguments, the prosecutor never had a chance to emphasize the plea or argue that it was relevant to the question of the other defendants' guilt. See Leach, 918 F.2d 467 (one factor to consider is whether there was an "improper emphasis or use of the plea as substantive evidence"). In addition, we further note that Gabriel Melecio-Arguelles, the defendant who properly reserved this point of error by objecting at trial, was also one of the defendants who gave an inculpatory post-arrest statement.