**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 13, 2011

Lyle W. Cayce
Clerk

No. 10-40651

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ROBERTO HUERTA SANCHEZ, III,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:09-CR-2147

Before JOLLY and HAYNES, Circuit Judges, and VANCE,[*] District Judge.

PER CURIAM:[**]

Roberto Huerta Sanchez, III ("Sanchez") was convicted by a jury of conspiracy to possess with intent to distribute more than 1,000 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and of possession with intent to distribute more than 1,000 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and 18 U.S.C. § 2. In addition to challenging the admission of certain expert testimony, Sanchez

---

[*] Chief Judge of the Eastern District of Louisiana, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-40651

argues that the district court erred in overruling his post-trial motion for a judgment of acquittal because he argues that the evidence was insufficient to support his conviction. Sanchez also challenges this ruling based upon the fact that a judge other than the judge who tried the case ruled upon this motion. Finding no reversible error, we AFFIRM.

## I. FACTS

Sanchez was arrested after Border Patrol agents found approximately 1,950 kilograms of marijuana in a tractor-trailer Sanchez was driving at a checkpoint north of Laredo, Texas. The agents found a number of documents in the cab of the tractor-trailer, including a bill of lading that listed Sanchez as the only driver and described the contents of the tractor-trailer as braided polyester textile. The purchasing director of the company listed on the bill as the recipient of the tractor-trailer's contents testified that the company had never done business with either the carrier or the shipper listed on the bill; that the terms of the shipment were inconsistent with how the company operates; that the company name was misspelled; and that the textiles in the tractor-trailer were not the type used by the company.

Following his arrest, Sanchez waived his right to remain silent. Although the bill of lading listed Dallas as the destination for the contents of the tractor-trailer, Sanchez told agents that a man named Thomas Martinez had paid him $250 to pick up the tractor-trailer and drive it to a mile marker near San Antonio. He was to meet another driver, whose name he did not know, at a truck stop. According to Sanchez, that driver was to change the tires on the tractor-trailer and then drive it the rest of the way to Dallas. Sanchez also stated that he was to receive a phone call about an hour and a half after leaving Laredo with instructions for meeting the unknown driver. Sanchez could not provide an exact street address where he picked up the tractor-trailer, but stated

No. 10-40651

that it was located on a road with several warehouses. He also told agents that the tractor-trailer had already been loaded by Martinez when he arrived.

A Drug Enforcement Administration agent who conducted the post-arrest interview and was admitted as an expert in commercial trucking told the jury that the manner in which Sanchez picked up the tractor-trailer was uncommon. The agent testified that it was unusual for a commercial truck driver to relinquish control of a tractor-trailer at a truck stop and to take cargo to an address not listed on the bill of lading. The agent also testified about inconsistencies in Sanchez's explanation of when he received the phone in his possession. According to the agent, that phone rang continuously during Sanchez's interview and initially displayed an "unknown number" on the caller ID. Eventually, when the number came through, Sanchez exclaimed, "Oh, my God. It's my girlfriend. How did she get this number?" Sanchez agreed to have the telephone call recorded and immediately asked his girlfriend how she got the number. When asked for his girlfriend's name, Sanchez responded, "I don't want to get her involved." Sanchez eventually gave the agents the name of the girlfriend's apartment building. However, Sanchez told them he did not know her apartment number, despite also stating that they had been dating for nine months. The jury also heard testimony from another DEA agent, who was offered as an expert on the price of marijuana. That agent testified that the amount of marijuana discovered in the tractor-trailer would sell for between $1,505,500 and $1,823,250 in San Antonio.

After the Government presented its case, defense counsel moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the Government failed to prove Sanchez's knowledge of the contents of the tractor-trailer. The trial was conducted by Judge Ellison, a

No. 10-40651

judge from the Houston Division who was specially sitting in Laredo.[1] The judge stated that he thought the Government met the Rule 29 burden, but he agreed to carry the motion to the close of all the evidence. The defense then rested immediately without calling additional witnesses. The jury convicted Sanchez on both counts alleged in the indictment.

After the conclusion of the trial, Judge Alvarez, then resident in Laredo,[2] resumed the handling of the case. Sanchez filed a renewed motion for judgment of acquittal, arguing that the Government failed to prove Sanchez's knowledge. Sanchez further asserted error in the Government's elicitation from witnesses, over defense counsel's objection, that the value of marijuana led to an inference of Sanchez's knowledge. Judge Alvarez denied the motion on February 18, 2010. The trial transcript was filed on June 20, 2010. Five days later, Sanchez moved for reconsideration of the denial of his motion for acquittal, requesting that the order denying the motion be rescinded so that Judge Ellison could reconsider the motion.

During sentencing, which took place on June 28, defense counsel raised the motion for reconsideration. Judge Alvarez denied the motion. Although she had not had the transcript of the trial at the time of her original denial, she explained that she familiarized herself with the record at that time.[3] Sanchez was then sentenced to 120 months imprisonment for both counts, to run concurrently. Sanchez appealed.

---

[1]  Both the Laredo Division and the Houston Division are in the Southern District of Texas, and both Judges Ellison and Alvarez are duly appointed district judges in the Southern District of Texas.

[2]  Judge Alvarez has since moved her primary duty station to McAllen.

[3]  Of course, by the time of this exchange and the denial of the motion for reconsideration, the transcript had been filed, and Sanchez does not contend that Judge Alvarez had insufficient information about the case to preside over his sentencing.

No. 10-40651

## II. DISCUSSION

A.  Ruling by a Judge Other than the Trial Judge

Sanchez first contends that his due process rights were violated because the judge who denied his post-trial motion for a judgment of acquittal was not the same judge who presided over his trial.  Sanchez argues that reassignment to Judge Alvarez was unwarranted, and she did not receive the trial transcript before deciding the motion.  Sanchez requests that we remand to Judge Ellison for reconsideration of his motion.

We reject Sanchez's arguments as they pertain to this alleged error in the proceedings below.  "The test applied to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Styron v. Johnson*, 262 F.3d 438, 454 (5th Cir. 2001) (quoting *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988) (quotations and citation omitted)).  The Federal Rules of Criminal Procedure provide that "[a]fter a verdict or finding of guilty, any judge regularly sitting in or assigned to a court may complete the court's duties if the judge who presided at trial cannot perform those duties because of absence, death, sickness, or other disability."  FED. R. CRIM. P. 25(b)(1).  Even assuming *arguendo* that Judge Ellison's return to Houston did not make him "absent" from Laredo,[4] Sanchez has not shown a reasonable probability that the outcome in this case would have been different if Judge Ellison had ruled on the motion.  First, the denial of a motion for judgment of acquittal is not a matter of judicial discretion, but one reviewed de novo.  *United States v. Whitfield*, 590 F.3d 325, 354 (5th Cir. 2009), *cert. denied*, 131 S. Ct. 136 (2010).  Second, Judge Ellison had already effectively denied the motion, as he stated that he thought the Government had met the Rule 29 burden.  Although the judge carried the

---

[4] Sanchez does not dispute that Judge Alvarez was a "judge regularly sitting" in the court in Laredo.

motion to the end of the evidence, defense counsel rested without presenting any additional evidence. Third, Judge Alvarez denied the motion twice—once before the transcript was filed but after she had familiarized herself with the facts of the case and once after the transcript was filed. Finally, in this opinion, we review the sufficiency of the evidence de novo, representing the fourth time such sufficiency has been reviewed. Sanchez has received more than adequate due process on this point. Because Sanchez has not shown a reasonable probability that the outcome of his case would have been different had the presiding trial judge considered his post-trial motion for acquittal, we find no error warranting reversal.

B. Sufficiency of the Evidence

We next turn to the propriety of the denial of the post-trial motion for acquittal. As mentioned above, because Sanchez moved for a judgment of acquittal, we review his sufficiency of the evidence claim de novo. *United States v. Frye*, 489 F.3d 201, 207 (5th Cir. 2007) (citation omitted). We must "determine whether . . . a rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). "We review 'the evidence and the reasonable inferences which flow therefrom in the light most favorable to the verdict.'" *Id.* (quoting *United States v. Jones*, 185 F.3d 459, 464 (5th Cir. 1999)). To sustain a conviction for possession of marijuana with intent to distribute, the Government must prove beyond a reasonable doubt that the defendant (1) knowingly possessed (2) marijuana (3) with intent to distribute. *United States v. Ramos-Cardenas*, 524 F.3d 600, 605 (5th Cir. 2008). "Conspiracy to possess marijuana with intent to distribute requires proof beyond a reasonable doubt additionally of (1) the existence of an agreement to possess with intent to distribute; (2) knowledge of the agreement; and (3) voluntary participation in the agreement." *Id.*

No. 10-40651

After reviewing the record in this case, we find sufficient evidence to sustain Sanchez's conviction both for possession with intent to distribute and conspiracy. Sanchez was in control of the vehicle transporting the drugs. Although "[w]hen drugs are hidden in a secret compartment . . ., guilty knowledge may not be inferred solely from the defendant's control of the vehicle," control is still a factor the jury may consider. *United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 361 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 1508 (2011). Sanchez made inconsistent statements during his interview, and the suspicious circumstances attending this case allowed the jury to infer that Sanchez knew of the presence of drugs in the tractor-trailer. For example, although Sanchez possessed a commercial trucking license for eleven years, testimony at trial established that Sanchez's explanation of how he came to control the tractor-trailer was unusual. *See United States v. Richardson*, 848 F.2d 509, 513 (5th Cir. 1988) (stating that "'a less-than-credible explanation' is 'part of the overall circumstantial evidence from which possession and knowledge may be inferred'" (citation omitted)). Further, the jury could infer that Sanchez would not be entrusted with such a large amount of drugs unless he knew he was part of the drug trafficking scheme. *United States v. Villarreal*, 324 F.3d 319, 324 (5th Cir. 2003) (stating that the jury could reasonably infer knowledge from the presence of drugs worth $300,000). As for the conspiracy charge, the jury could infer the existence of an agreement given the difficulty in loading the amount of marijuana involved and Sanchez's relationship with Martinez, who hired him, gave him a phone, and told him to meet another driver. *See United States v. Gutierrez-Farias*, 294 F.3d 657, 661 (5th Cir. 2002) (finding sufficient evidence to support a conspiracy conviction based on the large quantity and value of the marijuana involved and the difficulty of secreting it in tires, as well as the defendant's reluctance to give identifying information about others and the fact that the defendant lied about his employment).

7

No. 10-40651

C. Admission of Expert Testimony

Finally, we reject Sanchez's argument that the district court erred in allowing the Government's expert witnesses to present evidence regarding how drug cartels operate. We review a district court's evidentiary decisions for abuse of discretion. *Gutierrez-Farias*, 294 F.3d at 662 (citation omitted). We conduct a heightened review of evidentiary rulings in a criminal case. *Id.* (citation omitted). "Any error in admitting the evidence is subject to harmless error review." *United States v. Mendoza-Medina*, 346 F.3d 121, 127 (5th Cir. 2003). Thus, "[u]nless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required." *Id.* (quoting *United States v. Williams*, 957 F.2d 1238, 1242 (5th Cir. 1992) (citation omitted)). Further, "[a] defendant may not complain on appeal that he was prejudiced by evidence relating to a subject which he opened up at trial." *United States v. Carey*, 589 F.3d 187, 193 (5th Cir. 2009) (quoting *United States v. Wilson*, 439 F.2d 1081, 1082 (5th Cir. 1971)), *cert. denied*, 130 S. Ct. 1930 (2010).

We find it unnecessary to determine whether such evidence would have been admissible without any "door-opening," as we conclude that defense counsel opened the door to this testimony by his line of questioning during cross-examination of the expert witnesses. *See United States v. Jimenez*, 509 F.3d 682, 691 (5th Cir. 2007) (rejecting a Confrontation Clause challenge to admission of certain testimony, as defense counsel opened the door by asking the witness on cross-examination for the basis of his suspicions about the defendant); *see also United States v. Taylor*, 716 F.2d 701, 710 (9th Cir. 1983) (finding that defense counsel opened the door to a line of questioning about whether drug manufacturers used "innocent" third parties to pick up chemicals). Even if any alleged error was not invited, the circumstantial evidence in this case supports the conclusion that such error was not harmful. *See Williams*, 957 F.2d at 1243 ("Because the evidence bearing on [the defendant's] guilt is overwhelming, . . .

8

testimony that [the defendant's] behavior matched a drug courier profile did not substantially influence the jury.").[5]

AFFIRMED.

---

[5] Here, the district court also instructed the jury that the witnesses could not testify to Sanchez's mental state, further buttressing our determination that any alleged error in the admission of this testimony was harmless. *See Gutierrez-Farias*, 294 F.3d at 663 (finding harmless error in admission of expert testimony; noting that the district court attempted to cure defects in that testimony by instructing the jury that it could not rely on that testimony alone as proof of the defendant's guilty knowledge).