**United States Court of Appeals
Fifth Circuit**

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**F I L E D**

February 6, 2013

No. 12-60106

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

CAMERON ALLEN FAULKNER,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:11-CR-00088

Before REAVLEY, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

Cameron Allen Faulkner ("Faulkner") appeals his conviction and thirty-four month sentence for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). We conclude that the evidence was sufficient to support the jury's verdict and, therefore, AFFIRM Faulkner's conviction and sentence.

I.

At approximately 11:30 p.m. on January 1, 2011, Faulkner was driving his

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Rule 47.5.4.

car on Mississippi Highway 309 near its intersection with Highway 78, where law enforcement had set up a safety checkpoint. Faulkner made a U-turn as he approached the checkpoint and began traveling in the opposite direction. Officer Walter Jones ("Officer Jones") of the Byhalia Police Department observed Faulkner's attempt to avoid the checkpoint, and began to pursue Faulkner. Faulkner did not pull over, and two other officers joined the pursuit.

As the pursuit continued, Faulkner turned onto a residential, dead-end street. Officer Jones saw Faulkner's vehicle speed up and slow down several times, before making another U-turn to avoid the dead-end. Faulkner eventually crashed and wrecked his car during the pursuit. He then exited and ran from the vehicle. Soon after, officers found Faulkner hiding in a ditch and arrested him.

After midnight, officers returned to the scene to search for contraband that Faulkner might have thrown from the car during the pursuit. The officers, who searched the premises with spotlights, did not find any contraband.

Officer Jones returned to the scene at approximately 2:30 p.m. with another officer to search for contraband in the daylight and for a set of keys that he had lost during his last search of the premises. This time, a resident who lived on the street approached Officer Jones. The resident told Officer Jones that he found a shiny pistol at the end of his driveway just prior to the officers' arrival. The resident had just returned from a hunting trip and had no idea how long the pistol had been on his driveway or how it got there. The location where the resident found the pistol was about a quarter of a mile from another house on the same residential street where Faulkner lived with his mother. Investigators identified the pistol as a Glock .40, Model 23 handgun, but did not retrieve fingerprints from it. During the investigation, officers discovered that the pistol had been stolen from Ed's Pawn Shop in May 2010.

The government indicted Faulkner on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). The

indictment specifically alleged that Faulkner "knowingly possessed a firearm" "[o]n or about January 1, 2011." The district court denied Faulkner's pre-trial motion, and renewed motion at trial, for dismissal of his charge for lack of jurisdiction. The district court also denied Faulkner's motion to dismiss his charge under Rule 29 of the Federal Rules of Criminal Procedure.

The parties presented the following evidence at the two-day trial: Officer Jones testified to details of the pursuit, including: (1) he saw Faulkner's vehicle speed up and slow down and, as a result, thought that Faulkner might have thrown something from the vehicle; and (2) when he returned to the residential, dead-end street at midnight to search for any thrown contraband, it was difficult to see in the dark—even with spotlights.

The resident who found the weapon on his driveway testified that he noticed the Glock .40 as soon as he pulled into his driveway after returning home from his hunting trip with his wife on January 2, 2011. The resident did not remember the exact date, but stated that he went on the hunting trip "close to the new years." He also did not know how the pistol ended up on his driveway.

Special Agent Tim Boles ("Agent Boles") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") testified that he investigated the burglary of sixteen firearms from Ed's Pawn Shop in May 2010. Agent Boles recounted questioning Faulkner, who was then in custody, after the Glock .40 in question had been traced to Ed's Pawn Shop. According to Agent Boles, Faulkner described the following events that involved the specific Glock .40 that officers retrieved from the driveway: In July or August 2010, Faulkner entered a car with a male ("Dale"). In the car, Dale asked Faulkner if he wanted to purchase any firearms. Faulkner told him that he did not have money, but would look at them. Dale then drove Faulkner to Ed's Pawn Shop, where they met another male named Jason in the parking lot. Jason then entered Dale's vehicle with a bag, which contained about ten handguns. Faulkner searched in the bag for guns. Faulkner selected a Glock .40 and a nine-millimeter pistol

from the bag because he felt that they were high quality guns. Dale paid for the guns. A few months later—in July or August 2010—Faulkner traded a quarter of an ounce of marijuana to Dale in exchange for the Glock .40.

Agent Boles also testified that Faulkner wrote and signed a statement with those details, which Agent Boles asserted had to do with the specific Glock .40 found that the officers retrieved. Proceeding *pro se*,[1] Faulkner challenged on cross-examination that he admitted during questioning that the Glock .40 at issue was the same Glock .40 discussed in the written statement. Agent Boles acknowledged that the written statement itself did not state that Faulkner admitted to possessing the same gun that officers retrieved after the January 1, 2011, pursuit. On redirect, Agent Boles maintained that both he and Faulkner understood at the time of questioning that the interview was about the specific Glock .40 that officers retrieved after the pursuit.

The jury returned a guilty verdict. The district court sentenced Faulkner to thirty-four months of imprisonment. Faulkner timely appealed.

## II.

On appeal, Faulkner challenges the sufficiency of the evidence in support of his conviction for being a felon in possession of a firearm.[2] Faulkner preserved his objection to the sufficiency of the evidence by moving for a judgment of acquittal at the end of the government's case-in-chief and by renewing the motion at the close of all the evidence. We review the district court's denial of

---

[1] Approximately three weeks before trial, Faulkner moved to proceed to trial pro se. Soon after, the district court held a hearing to determine Faulkner's ability to proceed to trial pro se. Faulkner was adamant about representing himself. After concluding that Faulkner intelligently and voluntarily waived his right to counsel, the district court granted him permission to proceed to trial pro se.

[2] Prior to trial, Faulkner claimed that federal district courts have no jurisdiction over him because he is a Moorish American Citizen rather than a United States citizen. The record, however, shows that Faulkner admitted upon questioning by the district court that he was born in Memphis, Tennessee. He was also charged with a crime that occurred in the Northern District of Mississippi. Moreover, in briefing on appeal, the federal public defender conceded that this jurisdiction argument had no merit and chose not to develop it.

a motion for acquittal challenging the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the jury's verdict. *United States v. Winkler*, 639 F.3d 692, 696 (5th Cir. 2011). We will uphold the jury's verdict if a rational trier of fact could conclude that "the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict." *United States v. Percel*, 553 F.3d 903, 910 (5th Cir. 2008) (internal punctuation marks and citation omitted). In reviewing the sufficiency of the evidence, we do "not weigh evidence or assess the credibility of witnesses, and the jury is free to choose among reasonable constructions of the evidence." *United States v. Ramos–Cardenas*, 524 F.3d 600, 605 (5th Cir. 2008).

To convict a defendant of the offense of felon in possession of a firearm, the government must prove beyond a reasonable doubt that: (1) the defendant was convicted previously of a crime punishable by imprisonment for a term exceeding one year, (2) the defendant possessed a firearm, and (3) the firearm traveled in or affected interstate commerce. *See* § 922(g)(1); *United States v. Broadnax*, 601 F.3d 336, 341 (5th Cir. 2010). Whether Faulkner possessed the firearm is the only element in dispute.

Viewing the controverted testimony about Faulkner's confession, in combination with the other circumstantial evidence described above, in the light most favorable to the jury's verdict, we conclude that the evidence was sufficient for a rational trier of fact to conclude that the possession element was satisfied beyond a reasonable doubt. *Percel*, 553 F.3d at 910. Although Faulkner disputed at trial that he confessed to possessing the Glock .40 in question, the jury was free to believe Agent Boles instead. *Ramos–Cardenas*, 524 F.3d at 605.

### III.

For the foregoing reasons, Faulkner's conviction and sentence are AFFIRMED.