**UNITED STATES of America**

v.

**Robert E. STEVENS and
Arthur Gilmore, Jr.**

**Cr. Nos. 10–0200–01, 10–0200–02.**

United States District Court,
W.D. Louisiana,
Monroe Division.

March 3, 2011.

Opinion Denying Reconsideration
April 27, 2011.

C. Mignonne Griffing, U.S. Attorneys Office, Shreveport, LA, for United States of America.

### RULING

ROBERT G. JAMES, District Judge.

Pending before the Court are Defendant Arthur Gilmore, Jr.'s ("Gilmore") "Motion to Sever Trial of Defendant from Co-Defendant's Trial Because of Prejudicial Joinder" ("Motion to Sever") [Doc. No, 37], "Motion to Dismiss Count 1 of the Indictment" ("Motion to Dismiss") [Doc. No. 39], and "Motion for Bill of Particulars" [Doc. No. 40]. Defendant Robert E. "Red" Stevens ("Stevens") has joined in each of the motions filed by Gilmore. [Doc. Nos. 36 & 43]. The Government has filed an "In Globo Response to Defense Motions" [Doc. No. 48]. Gilmore filed a "Reply to Government's In Globo Response to Defense Motions" ("Reply") [Doc. No. 52].

For the following reasons, Defendants' motions are DENIED.

### *ALLEGED FACTS*

Gilmore and Stevens are charged in a two-count Indictment with violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and the Hobbs Act, 18 U.S.C. § 1951. During the relevant time period of the Indictment, Gilmore and Stevens served as elected councilmen on the five-member Monroe City Council. The Government contends the evidence will show that both Defendants assisted a cooperating witness ("CW") in specific matters coming before the City of Monroe in exchange for cash payments and other consideration. The Government seeks to prove that Gilmore and Stevens engaged in a criminal enterprise in order to enrich themselves via bribes in violation of RICO. In Section F of Count 1 of the Indictment, the Government identifies nine predicate acts of racketeering activity, upon which the RICO charges are based:

(1) Beginning on or about February 21, 2008, and continuing through February 28, 2008, Stevens committed public bribery by accepting and offering to accept $1,000.00 from the CW for assisting the CW in specific matters pending before the Board of Adjustments;

(2) Beginning on or about February 14, 2008, and continuing through March 27, 2008, Gilmore committed public bribery by accepting and offering to accept $1,000.00 and other valuable consideration from the CW for assisting the CW in specific matters coming before the City of Monroe;

(3) Beginning on or about April 2, 2008, and continuing through March 2, 2009, Gilmore committed public bribery by accepting and offering to accept a reduced purchase price for land from the CW for assisting the CW in specific matters coming before the City of Monroe;

(4) Beginning on or about June 10, 2008, and continuing through June 19, 2008, Stevens committed public bribery by accepting and offering to accept $500 from the CW for assisting the CW in specific matters coming before the City of Monroe;

(5) On or about July 1, 2008, Gilmore committed public bribery by accepting and offering to accept S230.00 from the CW for assisting the CW in specific matters coming before the City of Monroe;

(6) Beginning on or about December 6, 2008, and continuing through December 18, 2008, Stevens committed public bribery by accepting and offering to accept $800 from the CW for assisting the CW in specific matters coming before the City of Monroe;

(7) Beginning on or about March 25, 2009, and continuing through April 7, 2009, Stevens committed public bribery by accepting and offering to accept $3,000.00 from the CW for assisting the CW in specific matters coming before the City of Monroe;

(8) Beginning on or about August 25, 2009, and continuing through August 28, 2009, Gilmore committed public bribery by accepting and offering to accept $207.00 from the CW for assisting the CW in specific matters coming before the City of Monroe; and

(9) Beginning on or about December 11, 2009, and continuing through December 17, 2009, Stevens committed public bribery by accepting and offering to accept $1,000.00 for assisting the CW in specific matters coming before the City of Monroe.

[Doc. No. 1].

The Government also contends that Defendants violated the Hobbs Act by obtaining property not due to them under color of official right.

In support of the charges against Defendants, the Government will present recordings of conversations between the CW and Gilmore and between the CW and Stevens.

### LAW AND ANALYSIS

#### A. Motion to Sever

■ Although Defendants admit they were properly joined for trial under Federal Rule of Criminal Procedure 8(b), they move to sever their trials on the basis of prejudice pursuant to Federal Rule of Criminal Procedure 14(a). They contend that a severance is necessary because the evidence is "so clearly inter-related that it will be extremely difficult for the trier of fact to compartmentalize the evidence with respect to each defendant." [Doc. No. 37, p. 2]; see Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Defendants further contend that the introduction of recordings of a potentially non-testifying co-defendant about activities similar to those of the other defendant "creates a severe Bruton problem." [Doc. No. 37. p. 2]. If the recordings of both Defendants are used at trial, then each Defendant contends that he will not be able to cross-examine his Co–Defendant if that Co–Defendant elects not to testify.

The Government responds that severance under Rule 14 is not necessary because the case is not so complex nor the evidence so overlapping that jurors will have difficulty compartmentalizing the evidence against each Defendant. To the contrary, the Government points out that the CW dealt with each Defendant alone, so that only one Defendant is on tape at any time. Although the Government admits that a Co–Defendant may be mentioned as someone the CW has dealt with or referred to as a city councilman, the Government argues that any potential prejudice can be addressed with proper limiting instructions. Additionally, the Government argues that there is no Bruton problem because neither Defendant confessed and implicated his Co–Defendant. The Government notes that Defendants' statements on the recordings are admissible, non-testimonial co-conspirator statements.

The Fifth Circuit has consistently held that when persons are indicted together,

they should be tried together. *United States v. McKinney*, 53 F.3d 664 (5th Cir. 1995); *United States v. Wilwright*, 56 F.3d 586 (5th Cir.1995). Joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 210, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987)); *see also United States v. Richardson*, 167 F.3d 621, 624 (D.C.Cir.1999) ("Joint trials are favored in RICO cases").

■ Rule 14 of the Federal Rules of Criminal Procedure provides that a court may grant a severance of defendants when it appears that a defendant will be prejudiced by a joint trial. FED. R. CRIM. P. 14. To justify severance of co-defendants, the movant must show that he would suffer specific and compelling prejudice against which the court is unable to provide protection, such as through a limiting instruction, and that this prejudice would result in an unfair trial. *United States v. Kaufman*, 858 F.2d 994, 1003 (5th Cir.1988) (citing *United States v. Toro*, 840 F.2d 1221, 1238 (5th Cir.1988)); *see also United States v. Lewis*, 476 F.3d 369, 383 (5th Cir.2007) (citing *United States v. Sudeen*, 434 F.3d 384, 387 (5th Cir.2005)). Defendants in a joint RICO trial "occupy 'an uneasy seat,'" but the mere fact that "'[i]t is difficult for the individual to make his own case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather are flocked together,'" does not justify severance. *United*

*States v. DeCologero*, 530 F.3d 36, 53 (1st Cir.2008) (quoting *Krulewitch v. United States*, 336 U.S. 440, 454, 69 S.Ct. 716, 93 L.Ed. 790 (1949) (Jackson, J., concurring)). That is, "[a] spillover effect, by itself, is an insufficient predicate for a motion to sever." *United States v. Bieganowski*, 313 F.3d 264, 287 (5th Cir.2002). "A district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933.

The Court finds no compelling reason for severance in this case. With regard to the interrelation of the evidence, the Court believes that the jury, with proper instruction, can separate and consider the Government's case against each Defendant. Therefore, this concern is insufficient to justify severance.

■ Defendants also raised Confrontation Clause issues under both *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and *Bruton*. The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." In *Crawford*, the Supreme Court held that the Sixth Amendment bars the admission of testimonial hearsay [1] against a criminal defendant unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. 541 U.S. at 68, 124

---

1. Various formulations of this core class of testimonial statements exist: *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

541 U.S. at 51–52, 124 S.Ct. 1354 (internal quotation marks and citations omitted).

S.Ct. 1354. For a statement to be "testimonial" within the meaning of *Crawford*, it must have been made " 'under circumstances winch would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *Melendez–Diaz v. Massachusetts*, 556 U.S. 662, 129 S.Ct. 2527, 2532, 174 L.Ed.2d 314 (2009) (quoting *Crawford*, 541 U.S. at 52, 124 S.Ct. 1354) (internal quotation marks omitted).[2]

However, "*Crawford* involved the admission of an unavailable witness's out-of-court statement in a single-defendant trial." *United States v. Ramos–Cardenas*, 524 F.3d 600, 609 (5th Cir.2008) (citing 541 U.S. at 68, 124 S.Ct. 1354). "[W]hile Crawford certainly prohibits the introduction of a co[-]defendant's out-of-court testimonial statement against the other defendants in a multiple-defendant trial, it does not signal a departure from the rules governing the admittance of such a statement against the speaker-defendant himself, which continue to be provided by *Bruton*, *Richardson* [*v. Marsh*, 481 U.S. 200, 202–03, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) ], and *Gray* [*v. Maryland*, 523 U.S. 185, 188, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998) ]." *Id.* at 609–10 (citations omitted).

▪ When an out-of-court statement was made by a defendant, it is typically classified under the Federal Rules of Evidence as an admission, not hearsay, and may be admitted against him. *See* FED. R. EVID. 801(d)(2). In a multi-defendant trial, the Supreme Court's decision in *Bruton* limits the admission of the statement against a co-defendant. In *Bruton*, the Supreme Court held that a criminal defendant's confrontation right is violated where a hearsay confession by his co-defendant that is "powerfully incriminating" against

the defendant is admitted into evidence, and the co-defendant does not testify. 391 U.S. at 126, 88 S.Ct. 1620. In this situation, limiting instructions alone are not an adequate remedy. *Id.*, at 137. *Bruton*, however, applies only to statements that are facially inculpatory. *See Richardson*, 481 U.S. at 207, 107 S.Ct. 1702. Confessions that are only "incriminating by connection" to other evidence are not excluded under *Bruton*. *See id.* at 209, 107 S.Ct. 1702.

▪ Moreover, the Confrontation Clause is not violated by admission of a non-testifying co-defendant's confession with a proper limiting instruction when the confession is redacted to eliminate any inculpatory reference to the defendant. *See Richardson*, 481 U.S. at 202–03, 107 S.Ct. 1702 (A defendant's Confrontation Clause rights were not violated by the admission of a co-defendant's confession that was redacted to omit any reference to the other defendant, as well as any indication that anyone other than the co-defendant and an identified third party (who was not on trial) participated in the crime); *cf. Gray*, 523 U.S. at 188, 118 S.Ct. 1151 (holding that a defendant's Confrontation Clause rights were violated by the admission of a co-defendant's confession that was redacted by replacing the defendant's name with blank spaces and, when read into evidence at trial, the word "deleted" or "deletion").

▪ Defendants failed to provide the Court with statements contained on the recordings, but the Government did so, identifying twenty (20) conversations between the CW and Stevens, which refer to Gilmore. In the Reply, Gilmore appears to challenge eleven (11) of those calls as

---

**2.** In his Reply, Gilmore chastises the Government for failing to acknowledge the Supreme Court's *Melendez–Diaz* decision. However, this case adds little to the analysis. As the

Supreme Court pointed out, *Melendez–Diaz* was a "rather straightforward application of [the] holding in Crawford." 129 S.Ct. at 2532–33.

causing a Confrontation Clause problem and necessitating severance. However,

> In several cases, the Fifth Circuit has found that statements unknowingly made to an undercover officer or agent are not testimonial in nature. *See, e.g., U.S. v. Vasquez,* 234 Fed.Appx. 310, 313–14 (5th Cir.2007). As to the statements which are contested, the defendants do not argue that the persons making the statements were aware at that time that they were speaking to, or in the presence of, a government agent or informant. By their very nature, statements to an undercover agent or informant are not made under circumstances which would lead an objective witness to reasonably believe that the statements would be available for later use at trial. Although the Supreme Court in *Crawford* declined to formulate a precise definition of "testimonial," when compared to the examples provided by the *Crawford* opinion itself, and in later cases, the Court cannot find that the statements made by the individuals speaking to or in the presence of a government agent or informant in this case are testimonial in nature. Accordingly, *Crawford* does not bar the admission of such statements at trial.

*United States v. Brown,* Crim. Action No. 10–100–BAJ–SCR, 2011 WL 576901, at *5 (M.D.La., Feb. 9, 2011); *see also Michigan v. Bryant,* —— U.S. ——, 131 S.Ct. 1143, 1155 n. 3, 1162, 179 L.Ed.2d 93 (2011) ("As we suggested in *Davis,* when a court must determine whether the Confrontation Clause bars the admission of a statement at trial, it should determine the 'primary purpose of the interrogation' by objectively evaluating the statements and actions of the parties to the encounter, in light of the circumstances in which the interrogation occurs"; in both the *Davis* and *Michigan*

cases, the Supreme Court explicitly reserved the question of whether and when statements made to someone other than law enforcement personnel are testimonial.).

In other words, statements made by Stevens and Gilmore in their separate conversations with the CW were not testimonial and thus do not violate the other Defendant's confrontation rights under *Crawford,*

■■■ Additionally, tire statements by **Stevens and by Gilmore** were not confessions facially inculpating the other Defendant (without reference to other evidence).[3] Therefore, the admission of the statements do not violate *Bruton.*

Based on the record before it, the Court finds that a joint trial will not violate Defendants' Sixth Amendment rights. Defendants have shown neither specific and compelling prejudice against which the Court is unable to provide protection, nor that such prejudice would result in an unfair trial. Therefore, Defendants' Motion to Sever is DENIED.

Finally, given the Court's conclusions in this Ruling, it need not reach the Government and Gilmore's dispute as to whether Defendants' statements in their separate conversations with the CW are admissible statements of co-conspirators. FED. R.EVID. 801(d)(2)(E) ("[A] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."). To the extent that Defendants contend that the statements of either Gilmore, Stevens, or the CW should be excluded at trial under the Federal Rules of Evidence, they should file a motion in limine prior to trial. Similarly, the Court will consider

---

**3.** The Court is not concerned under *Bruton* with the statements of the CW, but only the

statements of each Co–Defendant as to the other Co–Defendant.

any redaction and/or limiting instructions to address Defendants' concerns of prejudice. If Defendants seek redaction and/or limiting instructions, they should submit their proposals with their other pre-trial submissions.

### B. Motion to Dismiss

Defendants next move to dismiss Count 1 of the Indictment. Count 1 charges that beginning in 2006 and continuing until on or about December 17, 2009, Defendants improperly used the enterprise of the City of Monroe "to enrich themselves by extracting bribes in the forms of cash and other things of present or prospective value from individuals and organizations with business before the [City of Monroe]." [Doc. 1, p. 3]. Specifically, they are accused of committing public bribery in violation of La.Rev.Stat. 14:118 by promising to take "actions favorable" to the individuals and businesses from whom bribes were extracted.

 In the Fifth Circuit, " '[t]he propriety of granting a motion to dismiss an indictment under [Fed.R.Crim.P.] 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact.' " *United States v. Korn*, 557 F.2d 1089, 1090 (5th Cir.1977) (quoting *United States v. Miller*, 491 F.2d 638, 647 (5th Cir.1974)); *see also United States v. Flores*, 404 F.3d 320, 324 (5th Cir.2005). "[A] question of law presented in a case involving undisputed facts can be determined without a trial of the general issue," and a district court is, thus, authorized to rule on such a motion to dismiss under Rule 12. *Flores*, 404 F.3d at 325. A "district court may make preliminary findings of fact necessary to decide the

questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.1986) (other citations and internal quotation marks omitted), *quoted with approval in Flores*, 404 F.3d at 324 n. 6.

In this case, Defendants make two arguments. First, Defendants argue that, even if the predicate acts alleged by the Government are proven, as a matter of law, the acts do not constitute a pattern of racketeering under RICO.[4] Second, they contend that the pattern requirement in the RICO statute, as applied to them, is unconstitutionally vague. Thus, Defendants' arguments are properly addressed in a pre-trial motion.

#### 1. Pattern of Racketeering

 First, Defendants argue that the predicate acts alleged by the Government are insufficient to meet the continuity requirement necessary to establish a pattern of racketeering.

 The RICO statute provides:
It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Liability under this section may be based on "either of 'a pattern of racketeering activity,' or of 'collection of unlawful debt.' " *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232, 109 S.Ct.

---

4. The Government contends that Defendants' arguments, though couched in terms of legal sufficiency, are actually attacks on the sufficiency of the Government's evidence and thus they cannot obtain a pre-trial ruling under Fed.R.Crim.P. 12(b). The Court disagrees and reaches the substantive arguments raised by Defendants.

2893, 106 L.Ed.2d 195 (1989); *see also United States v. Posada–Rios,* 158 F.3d 832, 855 (5th Cir.1998) (If the Government proceeds on a pattern of racketeering activity, then it must prove "(1) the existence of an enterprise that affects interstate or foreign commerce, (2) that the defendant was 'employed by' or 'associated with' the enterprise, (3) that the defendant participated in the conduct of the enterprise's affairs, and (4) that the participation was through 'a pattern of racketeering activity.'") (citing *United States v. Erwin,* 793 F.2d 656, 670 (5th Cir.1986)). "Racketeering activity" is defined under RICO as "any act or threat involving," among others, state-law crimes such as bribery. 18 U.S.C. § 1961(1). At a minimum, to show a pattern, the statute requires two racketeering predicates committed within a 10–year period. 18 U.S.C. § 1651(5). While the RICO statute establishes the minimum number of predicates, the Supreme Court has held that the Government must prove more. *See H.J., Inc.,* 492 U.S. at 238–39, 109 S.Ct. 2893. The "racketeering predicates" must be "related" and "amount to or pose a threat of continued criminal activity." *Id.* at 239, 109 S.Ct. 2893.

With regard to continuity, the Supreme Court has explained further:

"Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *See Barticheck v. Fidelity Union Bank/First National State,* 832 F.2d 36, 39 (3d Cir.1987). It is, in either case, centrally a temporal concept—and particularly so in the RICO context, where what must be continuous, RICO's predicate acts or offenses, and the relationship these predicates must bear one to another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months **and** threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated.

*Id.* at 241, 109 S.Ct. 2893 (boldface type added) (citing S.Rep. No. 91–617, at 158). The continuity requirement is "satisfied where it is shown that the predicates are a regular way ... of conducting or participating in an ongoing and legitimate RICO 'enterprise.'" *Id.* at 243, 109 S.Ct. 2893.

Citing cases involving a closed period of repeated conduct from a number of courts, Defendants argue that the predicate acts alleged did not occur over a substantial period of time and, thus, do not establish the continuity necessary for a pattern of racketeering activity. They point out that the Indictment alleges that Stevens committed five predicate acts over a 22–month period and that Gilmore committed four predicate acts over an 18–month period. Defendants contend that these few acts allegedly committed over a less-than-two-year period are insufficient as a matter of law to sustain a RICO conviction.

The Government responds that this case involves open-ended continuity and that Defendants' predicate acts constitute a pattern because they establish a threat of continued racketeering activity. Specifically, the Government contends that Defendants would have continued taking bribes from the CW had the scheme not been terminated by the FBI on December 17, 2009, with a search of Stevens and interviews or attempted interviews of Stevens and Gilmore. Additionally, while there are a total of nine charged acts of

racketeering, occurring between February 2008 and December 2009, the Government contends that the CW will testify that he paid bribes to Defendants as early as 2006.

In *United States v. Walker,* 348 Fed. Appx. 910 (5th Cir.2009), two state court judges, Michael Walker and Vernon Claville, were charged with a RICO violation that included ten acts over a two-and-a-half month period beginning May 3, 2007, and ending July 21, 2007. Walker and Claville argued that the predicate acts over this period of time were insufficient "to establish the continuity facet of a pattern of racketeering as required by RICO." *Id.* at 911. The Fifth Circuit disagreed, holding:

> Despite short durations, courts have held that the continuity facet is met when there is no doubt that a jury could reasonably infer from the frequency and escalating seriousness of the defendants' crimes that their past conduct ... by its nature projects into the future with a threat of repetition. Here, the evidence shows there is no doubt that a jury could reasonably infer from the proven acts that Walker's and Claville's actions would "project into the future with a threat of repetition." As such, the Government met the continuity facet of a pattern of racketeering.

*Id.* at 911–12 (citing *United States v. Richardson,* 167 F.3d 621, 626 (D.C.Cir.1999) (quoting *H.J., Inc.,* 492 U.S. at 241, 109 S.Ct. 2893)).

While *Walker* is not binding authority on this Court, it is persuasive and consistent with the Supreme Court's analysis in *H.J., Inc.* Based on the record before it, the Court finds that the Government has sufficiently alleged a pattern of racketeering activity to survive Defendants' pretrial motion. If Defendants wish to challenge the sufficiency of that evidence, they may do so in a proper motion for judgment of acquittal at the close of the Government's

case. Defendants' Motion to Dismiss on this basis is DENIED.

### 2. Vagueness Challenge

■ Defendants also challenge the RICO statute on grounds that the pattern requirement is vague and thus violates the Due Process Clause. In support, they cite Justice Antonin Scalia's concurrence in *H.J., Inc.,* criticizing the Supreme Court for providing nothing more than "hints as to what RICO means, though with the caveat that Congress intended that they be applied using a 'flexible approach.'" 492 U.S. at 251, 109 S.Ct. 2893 (Scalia, J. concurring). Defendants argue that no one of ordinary intelligence could understand the pattern requirement of RICO if Justice Scalia is "unable to provide an interpretation of RICO that gives significantly more guidance concerning its application." *Id.* at 254–55, 109 S.Ct. 2893. Finally, Defendants ask the Court to accept Justice Scalia's "invitation" in *H.J., Inc.* to find that the pattern requirement of RICO is unconstitutionally vague. *See id.* at 256, 109 S.Ct. 2893 (Justice Scalia cautioned that the Supreme Court's inability "to derive from this statute anything more than ... [the] meager guidance [in *H.J., Inc.*] bodes ill for the day when [a constitutional] ... challenge is presented.").

The Government opposes Defendants' challenge and points out that numerous defendants have attacked the RICO statute citing Justice Scalia's concurrence, but the courts, including the Fifth Circuit Court of Appeals, have rejected those challenges.

■ A statute is unconstitutionally vague when it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926).

In *Abell v. Potomac Ins. Co. of Ill.*, 946 F.2d 1160 (5th Cir.1991), the appellant challenged the RICO statute, and particularly the pattern requirement, as unconstitutionally vague in violation of the procedural due process guarantees of the Fifth Amendment. The appellant, like Defendants herein, relied on Justice Scalia's concurrence in *H.J., Inc.*, arguing that "if the justices of the Supreme Court, the circuit judges sitting on the various Courts of Appeals and the district court judges are unable to discern the meaning of 'pattern of racketeering activity' from 18 U.S.C. §§ 1961, *et seq.*, then men of common intelligence must necessarily guess at its meaning and differ as to its application." 946 F.2d at 1166–67 (internal quotation marks omitted).

The Fifth Circuit analyzed the appellant's challenge, explaining the burden placed on him:

> In bringing his constitutional contention to us, Fryar is apparently overlooking the principle that "outside the First Amendment context, a party has standing to raise a vagueness challenge only insofar as the statute is vague as applied to his or her specific conduct." *United States v. Pungitore*, 910 F.2d 1084, 1104 (3d Cir.1990), *cert. denied*, 500 U.S. 915, 111 S.Ct. 2010, 114 L.Ed.2d 98 (1991); *see also United States v. Angiulo*, 897 F.2d 1169, 1179 (1st Cir.1990) (in absence of First Amendment considerations, vagueness challenge must be examined in light of a case's particular facts), *cert. denied*, 498 U.S. 845, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990). For his vagueness challenge to succeed, Fryar would have had to show this Court that the scope of RICO's "pattern" element was so unclear that a person of ordinary intelligence in

Fryar's position would not have had adequate notice that his actions constituted a "pattern of racketeering activity." *See id.* at 1179.

946 F.2d at 1167; *see also Walker*, 348 Fed.Appx. at 912 (Relying on *Abell* and rejecting appellants' claim that "RICO's pattern requirement is unconstitutionally vague because it is uncertain what period of time is required to constitute a pattern" because appellants only had standing to challenge a statute for vagueness as applied to his or her specific conduct, and "a person of ordinary intelligence in Appellants' positions would have had adequate notice of the criminality of his actions.").

In this case, Defendants are public officials accused of using their positions on the Monroe City Council to extract bribes from persons with business before the City of Monroe and in violation of the State's public bribery law. On the facts before it, the Court finds that Defendants had adequate notice that their alleged conduct would violate the RICO statute's pattern requirement. Thus, the RICO statute's pattern requirement, as applied to Defendants, is not unconstitutionally vague. Accordingly, Defendants' Motion to Dismiss on this basis is also DENIED.

## C. Motion for Bill of Particulars

■ Finally, Defendants move the Court to require the Government to file a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f). Defendants are charged with RICO and Hobbs Act violations as a result of their allegedly having received cash and "other things of present or prospective value" in return for favorable consideration before the City of Monroe for the "individuals" from whom the bribes were received.[5] Defendants

---

**5.** Defendants refer to their alleged receipt of "other considerations," but the Indictment states that Defendants extracted bribes "in the form of cash and other things of present or prospective value." [Doc. No. 1, p. 3].

contend that the Government should be required to file a bill of particulars identifying what things of present or prospective value they allegedly received or were offered and the names of the individuals from whom these bribes were allegedly received.

The Government opposes Defendants' motion, contending that a bill of particulars is not to be used to obtain detailed disclosure of evidence and that, through the discovery process, Defendants are well aware of the Government's theory of the case.

■■■■ "The purpose of a bill of particulars is to apprise a defendant of the charges against him with enough detail to allow him to prepare Ms defense." *United States v. Kirkham*, 129 Fed.Appx. 61, 71 (5th Cir.2005) (citing *United States v. Montemayor*, 703 F.2d 109, 117 (5th Cir. 1983)); *see also United States v. Davis*, 582 F.2d 947, 951 (5th Cir.1978). "A bill of particulars is not required if a defendant is otherwise provided . . . with sufficient information to enable him to prepare his defense and avoid surprise." *United States v. Moody*, 923 F.2d 341, 351 (5th Cir.1991). "A defendant should not use the Bill of Particulars to 'obtain a detailed disclosure of the government's evidence prior to trial.'" *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir.1978) (quoting *United States v. Perez*, 489 F.2d 51, 70–71 (5th Cir.1973)).

The Court finds that a bill of particulars is unnecessary in this case. The Indictment sufficiently apprised Defendants of the charges against them. To the extent that they might otherwise have been sur-prised by the identity of the CW and his claims against them, the Government has provided discovery, including recordings which detail the consideration paid and/or offered and from which Defendants should have been able to identify the CW.[6] Therefore, Defendants' Motion for a Bill of Particulars is DENIED.

### CONCLUSION

For the foregoing reasons, Gilmore's Motion to Sever [Doc. No. 37], Motion to Dismiss [Doc. No. 39], and Motion for Bill of Particulars [Doc, No. 40], all of which were joined by Stevens, are DENIED.

### RULING

Pending before the Court are Defendant Arthur Gilmore, Jr.'s ("Gilmore") "Motion to Reconsider the Court's Denial of Previously Filed Rule 14 Motion to Sever" ("Motion for Reconsideration") [Doc. No. 63] and "Motion in Limine To Exclude Prejudicial Portions of Transcripts that the Government Intends to Use at Trial; or, Alternatively, Supplemental Pleading in Support of Mr. Gilmore's Motion for Reconsideration of the Court's Denial of His Previously Filed Rule 14 Motion for Severance" ("Motion in Limine") [Doc. No. 64]. Defendant Robert E. "Red" Stevens ("Stevens") joined Gilmore's Motion in Limine [Doc. No. 82]. The Government has filed an "In Globo Response to Defense Motions" [Doc. No. 76]. Additionally, the Government and Stevens have filed pretrial memoranda briefing the issues of the admissibility of transcripts at trial and whether the recordings should be admitted in their entirety. *See* [Doc. Nos. 65 & 71].

---

6. In their Reply, Defendants contend that the Government "may call witnesses who it contends were alleged participants in the charged scheme," but who were "not referenced in the indictment." [Doc. No. 52, p. 2]. The Court has found that a bill of particulars is not warranted in this case. However, the Court does not expect Defendants to be ambushed at trial. Should Defendants truly be "surprised" by the Government's witness list when it is submitted ten (10) days prior to trial, the Court would consider a continuance or any other remedy necessary to provide Defendants a fair trial.

For the following reasons, Gilmore's Motion for Reconsideration is DENIED, and Gilmore's Motion in Limine, joined by Stevens, is DENIED. Stevens' objections to the presentation of transcripts to the jury and request that the recordings be submitted in their entirety are DENIED.

## A. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Gilmore and Stevens are charged in a two-count Indictment with violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and the Hobbs Act, 18 U.S.C. § 1951. Gilmore and Stevens have served as elected councilmen on the five-member Monroe City Council. The Government contends that both Defendants assisted a cooperating witness ("CW") in specific matters coming before the City of Monroe in exchange for cash payments and other consideration.

With regard to Count 1, the Government contends that beginning sometime in 2006 and continuing until on or about December 17, 2009, Stevens and Gilmore violated RICO by knowingly and unlawfully conducting and participating, directly and indirectly, in the affairs of the enterprise of the City of Monroe through a pattern of racketeering activity. Stevens and Gilmore are accused of taking and promising to take actions favorable to individuals and organizations with business before the City of Monroe in exchange for cash and other things of present or prospective value. Count 1 identifies five predicate acts of racketeering upon which the RICO charges against Stevens are based and four predicate acts of racketeering upon which the RICO charges against Gilmore are based.[1]

---

1. The Indictment charges:

(1) Beginning on or about February 21, 2008, and continuing through February 28, 2008, Stevens committed public bribery by accepting and offering to accept $1,000.00 from the CW for assisting the CW in specific matters pending before the Board of Adjustments;

(2) Beginning on or about February 14, 2008, and continuing through March 27, 2008, Gilmore committed public bribery by accepting and offering to accept $1,000.00 and other valuable consideration from the CW for assisting the CW in specific matters coming before the City of Monroe;

(3) Beginning on or about April 2, 2008, and continuing through March 2, 2009, Gilmore committed public bribery by accepting and offering to accept a reduced purchase price for land from the CW for assisting the CW in specific matters coming before the City of Monroe;

(4) Beginning on or about June 10, 2008, and continuing through June 19, 2008, Stevens committed public bribery by accepting and offering to accept $500 from the CW for assisting the CW in specific matters coming before the City of Monroe;

(5) On or about July 1, 2008, Gilmore committed public bribery by accepting and offering to accept $230.00 from the CW for assisting the CW in specific matters coming before the City of Monroe;

(6) Beginning on or about December 6, 2008, and continuing through December 18, 2008, Stevens committed public bribery by accepting and offering to accept $800 from the CW for assisting the CW in specific matters coming before the City of Monroe;

(7) Beginning on or about March 25, 2009, and continuing through April 7, 2009, Stevens committed public bribery by accepting and offering to accept $3,000.00 from the CW for assisting the CW in specific matters coming before the City of Monroe;

(8) Beginning on or about August 25, 2009, and continuing through August 28, 2009, Gilmore committed public bribery by accepting and offering to accept $207.00 from the CW for assisting the CW in specific matters coming before the City of Monroe; and

(9) Beginning on or about December 11, 2009, and continuing through December 17, 2009, Stevens committed public bribery by accepting and offering to accept $1,000.00 for assisting the CW in specific matters coming before the City of Monroe. [Doc. No. 1, Count 1, Section F].

With regard to Count 2, based on the same factual allegations, the Government contends that, beginning sometime in 2006 and continuing until on or about December 17, 2009, Defendants violated the Hobbs Act by obtaining property not due to them by extortion, which was induced under color of official right.

In support of the charges against Gilmore and Stevens, the Government relies on secret recordings made by the CW while working with and for the Government. There are no recordings of the CW meeting with both men at the same time. Rather, in each recording, the CW met with one of the Defendants. However, in some of the recordings, the CW and the Defendant with whom he is meeting make statements about the other Defendant.

In Defendants' previously filed Motion to Sever, they argued that a joint trial would be prejudicial because the statements made by the CW and one Defendant about the other Defendant raised concerns under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and the Sixth Amendment. The Court denied the Motion to Sever, concluding that statements made by Stevens and Gilmore in their separate conversations with the CW were non-testimonial and thus do not violate the other Defendant's Sixth Amendment rights under the Confrontation Clause, as interpreted in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). [Doc. No. 54]. Additionally, Stevens' and Gilmore's statements were not confessions which facially inculpate the other Defendant (i.e., without reference to other evidence) and thus do not violate *Bruton*. *Id*. Finally, statements by the CW also do not violate *Bru-*

*ton*. *Id*. The Court declined to reach the parties' dispute as to whether Stevens' and Gilmore's statements in their separate conversations with the CW are admissible as the statements of co-conspirators. FED. R.EVID. 801(d)(2)(E) ("[A] statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."). However, to the extent that Defendants contend that the statements of Gilmore, Stevens, or the CW should be excluded at trial under the Federal Rules of Evidence, the Court invited them to file a motion in limine prior to trial. The Court also stated that it would consider any redaction and/or limiting instructions.

Along with his pre-trial submissions, Gilmore filed the pending Motion in Limine and Motion for Reconsideration. Stevens joined in the Motion in Limine and filed a Pre–Trial Memorandum. As noted, the Government has responded to all of Defendants' filings.

## B. LAW AND ANALYSIS

### 1. Motion in Limine [2]

Gilmore has identified portions of the transcripts of the recordings and the bases upon which he objects to the admission of the recordings and accompanying transcripts.[3] Primarily, Gilmore argues that portions of the recordings are inadmissible because they violate Defendants' Sixth Amendment rights under the Confrontation Clause. *See Crawford*, 541 U.S. 36, 124 S.Ct. 1354; *see also Melendez–Diaz v. Massachusetts*, —— U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) (holding that evidentiary rules cannot overcome a defen-

**2.** Although Gilmore filed his Motion for Reconsideration prior to his Motion in Limine, that motion is offered as an alternative to the Motion in Limine. Therefore, the Court will consider the Motion in Limine first.

**3.** Although Gilmore speaks to the admission of the "transcripts," he obviously seeks the exclusion of these portions of both the recordings and the transcripts.

dant's right under the Confrontation Clause). However, Gilmore also asserts that portions of the recordings contain inadmissible hearsay, are irrelevant, are unfairly prejudicial, or would otherwise result in an unfair trial.

The Government opposes the Motion in Limine. The Government notes that most of the objected-to portions of the recordings are statements by Gilmore's Co–Defendant, Stevens, not by the CW. The Government argues that the admission of these statements does not violate Defendants' Sixth Amendment rights under the Confrontation Clause and should not be excluded under the Federal Rules of Evidence based on hearsay, relevance, or prejudice. To the extent that Gilmore contends that the admission of portions of the recordings would result in an "unfair trial," the Government contends that he has failed to identify any right that would be violated by their admission.

### a. Gilmore's Objections

#### (1) Objection # 1 (Exhibit 8T-p.0010, l.13 to p.0011, l.5)

The Government states that it does not intend to use this portion of the recordings. Therefore, the Motion in Limine as to this portion of the recordings is DENIED AS MOOT.

#### (2) Objection # 2 (Exhibit 8T-p.0042, ll.32–33)

The Government states that it does not intend to use this portion of the recordings. Therefore, the Motion in Limine as to this portion of the recordings is DENIED AS MOOT.

#### (3) Objection # 3 (Exhibit 8T-p.44, ll.5–10)

The Government states that it does not intend to use this portion of the record-

ings. Therefore, the Motion in Limine as to this portion of the recordings is DENIED AS MOOT.

#### (4) Objection # 4 (Exhibit 13T-p.006, ll.12–28)

Gilmore objects to inclusion of this portion of the recordings based on the Confrontation Clause and his right to a fair trial.

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." In *Crawford*, the Supreme Court held that "[w]here testimonial evidence is at issue, ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. at 68, 124 S.Ct. 1354; *see also United States v. Ramos–Cardenas*, 524 F.3d 600, 609 (5th Cir.2008) ("... *Crawford* certainly prohibits the introduction of a co[-]defendant's out-of-court testimonial statement against the other defendants in a multiple-defendant trial...."). For a statement to be "testimonial" within the meaning of *Crawford*, it must have been made "'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Melendez–Diaz*, 129 S.Ct. at 2532 (quoting *Crawford*, 541 U.S. at 52, 124 S.Ct. 1354).[4] As this Court has previously concluded, however, statements made by a defendant to a confidential witness, acting on behalf of the Government, are not testimonial because they are not "'made under circumstances which would lead an objective witness to reasonably believe that the statements would be available for later use at trial.'" [Doc. No. 54,

---

4. In his Reply, Gilmore chastises the Government for failing to acknowledge the Supreme Court's *Melendez–Diaz* decision. However, this case adds little to the analysis. As the

Supreme Court pointed out, *Melendez–Diaz* was a "rather straightforward application of [the] holding in *Crawford*." 129 S.Ct. at 2532–33.

p. 8 (quoting *United States v. Brown,* No. 10–100–BAJ–SCR, 2011 WL 576901, at *5 (M.D.La. Feb. 9, 2011)) ]; *see also United States v. Claville,* No. 07–50097–02, 2008 WL 914490, at *2 (W.D.La. Apr. 1, 2008) (relying on the definition of "testimonial statements" in *Crawford* to conclude that "surreptitious recordings are not testimonial"). Thus, to the extent that Gilmore objects under the Confrontation Clause to statements made by Stevens, his Objection is DENIED.

■ Gilmore also objects to statements made by the CW. The CW's statements are testimonial because he was aware that he was being recorded and that his statements might be used at trial. However, the introduction into evidence of the CW's statements does not violate the Confrontation Clause for a different reason: the CW will be available to testify at trial. *See Crawford,* 541 U.S. at 68, 124 S.Ct. 1354 (the Confrontation Clause "does not bar admission of a statement so long as the declarant is present at trial to defend or explain it"). Both Defendants will be able to exercise their Sixth Amendment right to confront their accuser, the CW, and to cross-examine him. Thus, Gilmore's Objection to the CW's statements under the Confrontation Clause is also DENIED.

Finally, to the extent that Gilmore has made a general objection that the admission of portions of the recordings and the accompanying transcripts violate his right to a "fair trial," his Objection is DENIED. Gilmore failed to provide the Court with a citation to any statutory or constitutional right, other than his Sixth Amendment Confrontation Clause right, which is violated by the admission of these recordings.

### (5) Objection # 5 (Exhibit 13T-p.007, ll.11–14)

Gilmore objects to inclusion of this portion of the recordings based on the Confrontation Clause and his right to a fair trial.

For the reasons stated in ruling on Objection # 4, Objection # 5 is also DENIED.

### (6) Objection # 6 (Exhibit 14T-p.003, ll.12–15)

Gilmore objects to inclusion of this portion of the recordings based on the Confrontation Clause and his right to a fair trial.

First, the Government points out that Gilmore's objection is based on a prior version of the transcript. The portion to which he objects has been updated to read:

STEVENS: Alright, well I appreciate being involved. I know you stay on, on the go.

CW: I, I try to. That way, that way I stay out of trouble.

[Doc. No. 76, p. 8]. The Government contends that Defendants should have no objection to this testimony. Gilmore did not file a reply, so it is unclear whether he maintains this objection.

To the extent that Gilmore maintains Objection # 6 based on the Confrontation Clause and his undefined right to a fair trial, for the reasons stated in ruling on Objection # 4, Objection # 6 is also DENIED.

### (7) Objection # 7 (Exhibit 33T-p.003, l.32, to p.004, l.2)

Gilmore next objects to inclusion of this portion of the recordings based on the Confrontation Clause and his right to a fair trial.

For the reasons stated in ruling on Objection # 4, Objection # 7 is also DENIED.

### (8) Objection # 8 (Exhibit 33T-p.005, ll.8–20)

The Government states that it does not intend to use this portion of the recordings. Therefore, the Motion in Limine as

to this portion of the recordings is DENIED AS MOOT.

### (9) Objection # 9 (Exhibit 53T-p. 0031, ll.29–32)

The Government states that it does not intend to use this portion of the recordings. Therefore, the Motion in Limine as to this portion of the recordings is DENIED AS MOOT.

### (10) Objection # 10 (Exhibit 65T-p.0010, ll.9–19)

Gilmore next objects to inclusion of this portion of the recordings based on the Confrontation Clause and his right to a fair trial.

For the reasons stated in ruling on Objection # 4, Objection # 10 is also DENIED.

### (11) Objection # 11 (Exhibit 65T-p.0011, ll.8–30)

Gilmore next objects to inclusion of this portion of the recordings based on the Confrontation Clause and his right to a fair trial.

For the reasons stated in ruling on Objection # 4, Objection # 11 is also DENIED.

### (12) Objection # 12 (Exhibit 65T-p.0012, ll.8–30)

Gilmore next objects to inclusion of this portion of the recordings based on the Confrontation Clause and under the hearsay rule.

For the reasons previously stated, the admission of this portion of the recordings does not violate the Confrontation Clause.

▮ " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED.R.EVID. 801(c). If a statement is not offered for the truth of the matter asserted, it is not hearsay. Typically, statements that are "part of a reciprocal and integrated conversation" with a defendant are not hearsay because they are not offered for their truth. *United States v. Cheramie,* 51 F.3d 538, 541 (5th Cir.1995). Instead, these statements "provide a context for the statements of the defendant." *Id.; see also United States v. Dixon,* 132 F.3d 192, 198 (5th Cir.1997) (statements of an informant who refused to testify at trial were "admissible to prove that they were uttered" rather than to establish the truth and also to put the defendant's statements into context); *United States v. Gutierrez–Chavez,* 842 F.2d 77, 81 (5th Cir.1988) (recorded statements were properly admitted "as reciprocal and integrated utterances between two parties ... for the limited purpose of putting the response of the [defendant] in context and making them intelligible to the jury and recognizable as admissions"); [5] *United States v. Chaney,* 299 Fed.Appx. 447, 452–53 (5th Cir.2008) (a witness' statements were admissible as non-hearsay because they were "part of a larger context of interaction" with the defendant).

A defendant's own statements are admissible if offered against him because they are, by definition, admissions by a party-opponent and thus not hearsay. FED. R. EVID. 801(d)(2) (An admission by a party-opponent is not hearsay if "[t]he statement is offered against a party and is ... the party's own statement, in either an individual or a representative capacity."). Similarly, if the defendant adopts the statements of another, in this case the CW, the statements are also non-hearsay admissions. FED.R.EVID. 801(d)(2)(B) (An admission by a party-opponent is not hearsay if "[t]he statement is offered against a party and is ... a statement of which the

---

**5.** "The Confrontation Clause also does not bar testimonial statements when they are offered

for some purpose other than the truth of the

party has manifested an adoption or belief in its truth.").

■ Finally, a "statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is also not hearsay. FED. R. EVID. 801(d)(2)(E). "The contents of the statement shall be considered but are not alone sufficient to establish the ... the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E)." *Id.* Under the case law interpreting this evidentiary rule, statements of a codefendant are admissible as co-conspirator statements, even when no conspiracy is charged, if the parties were engaged in a "joint venture." *See United States v. Saimiento–Rozo,* 676 F.2d 146, 147 (5th Cir.1982) ("However, it is not necessary that the conspiracy upon which admissibility of these statements is predicated be the conspiracy charged. Nor need the conspiracy or agreement be criminal in nature; it may be in the form of a joint venture." (citations omitted)); *see also United States v. Barksdale–Contreras,* 972 F.2d 111, 115 (5th Cir.1992) ("Indeed, the admission of evidence is valid even in the absence of a conspiracy charge, as long as the proof showed a joint venture." (citation omitted)).

■ Under the relevant case law, the Court finds that this portion of the recordings is admissible. The CW's statements are admissible to place Stevens' statements in context and to make the conversation understandable to the jury. Stevens' statements are admissible against him because they are not hearsay. Finally, the statements are admissible against Gilmore because the statements themselves evidence the joint venture between Gilmore and Stevens to advance the CW's

projects and to place them before the City Council.

For these reasons, Objection # 12 is DENIED.

### (13) Objection # 13 (Exhibit 65T-p.0014, l.29 to p.0015, l.12)

The Government states that it does not intend to use this portion of the recordings. Therefore, the Motion in Limine as to this portion of the recordings is DENIED AS MOOT.

### (14) Objection # 14 (Exhibit 65T-p.0020, ll.3–13)

Gilmore next objects to inclusion of this portion of the recordings based on the Confrontation Clause, the hearsay rule, and because it is prejudicial.

First, the Government points out that Gilmore's objection is based on a prior version of the transcript. The portion to which he objects has been updated to read:

STEVENS: Well ...

CW: ... you don't know why he does what he does.

STEVENS: Well, now you're right, I don't and, and I don't know, Robert grandstands a lot and but ...

CW: But that's, but that's him.

STEVENS: But you know, and, and that's what the scriptures say, if you, if you want to be a friend you must first show yourself friendly.

[Doc. No. 76, p. 13]. Since the version of the transcript that Gilmore relied on stated that it was "Arthur," not "Robert," who grandstanded, the Government contends that Defendants should have no objection to this portion of the transcript. Gilmore did not file a reply, so it is unclear whether he maintains this objection.

To the extent that Gilmore maintains Objection # 14 based on the Confrontation

---

matter asserted." *United States v. Hidalgo,* 226 Fed.Appx. 391, 399 (5th Cir.2007).

Clause, for the reasons stated in ruling on Objection # 4, Objection # 14 is also DENIED.

To the extent that Gilmore has any further objection, he can raise that issue with the Court prior to or during trial. At this time, Objection # 14 is DENIED.

### (15) Objection # 15 (Exhibit 65T-p.0025, ll.5-25)

Gilmore next objects to inclusion of this portion of the recordings based on the Confrontation Clause, the hearsay rule, and because it is prejudicial.

To the extent that Gilmore objects based on the Confrontation Clause, for the reasons stated in ruling on Objection # 4, Objection # 15 is also DENIED.

■■■ According to the Government, in this conversation Stevens and the CW discussed the appointment of an interim councilman after Councilman Robert Johnson resigned because of his election to a judgeship on the Fourth Judicial District Court. Assuming that this context is established prior to the introduction of this recording, the Court finds that the admission of these statements will not violate the hearsay rule. To the extent that the statements are offered against Stevens, they are his own statements and thus are not hearsay. The statements of the CW provide context and may not, at least in part, be offered for the truth of the matter asserted. Finally, the statements of Stevens may be offered against Gilmore because the appointment of an interim councilperson who would have a vote on the CW's projects further the joint venture to obtain the City Council's approval of the CW's projects.

Gilmore also contends that these portions of the recordings are inadmissible under Federal Rule of Evidence 403 because they are unfairly prejudicial. "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, [or] by the[ ] rules [of Evidence]...." FED. R.EVID. 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED.R.EVID. 401. However, Rule 403 limits the use of otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." All "[r]elevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. McRae,* 593 F.2d 700, 707 (5th Cir.1979). " 'Unfair prejudice' ... means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED. R. EVID. 403, Notes of the Advisory Committee.

In this case, the Court cannot conclude that the introduction of these statements causes unfair prejudice to Gilmore. If anything, Stevens' statements about Gilmore indicate that he "has his own mind" and thus might or might not agree to support the person discussed for the interim councilperson position. Objection # 15 is also DENIED on this basis.

### (16) Objection # 16 (Exhibit 68T-p.0002, ll.10-21)

Gilmore next objects to inclusion of this portion of the recordings based on the Confrontation Clause and his right to a fair trial.

For the reasons stated in ruling on Objection # 4, Objection # 16 is also DENIED.

### (17) Objection # 17 (Exhibit 101T–p.0001–0003)

Gilmore next objects to inclusion of this portion of the recordings based on its lack of relevancy, the hearsay rule, and because it is prejudicial.

 The Government responds that Gilmore is not even discussed or referred to in this telephone conversation. According to the Government, the evidence will show that, prior to the call, Stevens met with the CW seeking money to help pay his daughter's medical bills. The purpose of this particular call was to arrange a time when Stevens could pick up $3,000 from the CW.

The Government contends that the evidence is "extremely relevant" because it concerns the bribes which Stevens is charged with receiving.

Under these circumstances and assuming that the evidence is offered as stated, the Court finds that this portion of the recordings is clearly relevant because it makes the determination of a charge against Stevens more probable than it would be without the evidence. Further, as Gilmore is not even mentioned during this phone call, there can be no hearsay issue or prejudice to him. If Gilmore is concerned about the jury's confusion of the evidence against Stevens with the evidence against him, these concerns are addressed in the jury instructions and can be further addressed if necessary. Objection # 17 is DENIED.

### (18) Objection # 18 (Exhibit 102–pp.0001–0026)

The Government states that it does not intend to use this portion of the recordings. Therefore, the Motion in Limine as to this portion of the recordings is DENIED AS MOOT.

### (19) Objection # 19 (Exhibit 102T–p.0003, ll.28–35)

Gilmore next objects to inclusion of this portion of the recordings based on the Confrontation Clause, the hearsay rule, and its lack of relevancy.

To the extent that Gilmore objects based on the Confrontation Clause, for the reasons stated in ruling on Objection # 4, Objection # 19 is also DENIED.

This portion of the recordings is again relevant to Stevens' alleged acceptance of one of the bribes with which he is charged. Gilmore is not even discussed or referred to in this telephone conversation. As Gilmore is not even mentioned during this phone call, there can be no hearsay issue or prejudice to him. Thus, Gilmore's Objection # 19, to the extent that it is based on hearsay and lack of relevance, is also DENIED.

### (20) Objection # 20 (Exhibit 102T-p.0010, ll.16–35)

Gilmore next objects to inclusion of this portion of the recordings based on the Confrontation Clause, the hearsay rule, and its lack of relevancy.

To the extent that Gilmore objects based on the Confrontation Clause, for the reasons stated in ruling on Objection # 4, Objection # 20 is also DENIED.

To the extent that Gilmore objects based on hearsay, for the reasons stated in ruling on Objection # 12, Objection # 20 is also DENIED.

To the extent that Gilmore objects on relevancy grounds, this portion of the recordings is relevant to show Defendants' actions in bringing the CW's Sherrouse property before the City Council. Notably, this portion of the recordings will show that Stevens is about to bring this project up right after accepting a $3,000 bribe from the CW. Thus, Objection # 20 is also DENIED on relevancy grounds.

### (21) Objection # 21 (Exhibit 102T-p.0014, l.30, to p.0015, l.20)

Gilmore next objects to inclusion of this portion of the recordings based on the Confrontation Clause, the hearsay rule, and its lack of relevancy.

To the extent that Gilmore objects based on the Confrontation Clause, for the reasons stated in ruling on Objection # 4, Objection # 21 is also DENIED.

To the extent that Gilmore objects based on hearsay, for the reasons stated in ruling on Objection # 12, Objection # 21 is also DENIED.

To the extent that Gilmore objects on relevancy grounds, the Court finds that the statements are relevant to establish why it has been difficult to obtain City Council approval for a project on its merits. Objection # 21 is also DENIED on relevancy grounds.

### (22) Objection # 22 (Exhibit 102T-p.0020, ll.21–35)

Gilmore next objects to inclusion of this portion of the recordings based on the Confrontation Clause, the hearsay rule, and its lack of relevancy.

For the same reasons stated in ruling Objection # 21, Objection # 22 is also DENIED.

### (23) Objection # 23 (Exhibit 129T-p.0005, ll.7–20)

Gilmore next objects to inclusion of this portion of the recordings based on the Confrontation Clause, the hearsay rule, and the right to a fair trial.

To the extent that Gilmore objects based on the Confrontation Clause and the right to a fair trial, for the reasons stated in ruling on Objection # 4, Objection # 23 is also DENIED.

To the extent that Gilmore objects based on hearsay, for the reasons stated in ruling on Objection # 12, Objection # 23 is also DENIED.

### (24) Objection # 24 (Exhibit 168T-p.0002, ll.27–35)

Gilmore next objects to inclusion of this portion of the recordings based on the Confrontation Clause, the hearsay rule, its lack of relevancy as to Gilmore, and because it is prejudicial.

To the extent that Gilmore objects based on the Confrontation Clause, for the reasons stated in ruling on Objection # 4, Objection # 24 is also DENIED.

To the extent that Gilmore objects based on hearsay, for the reasons stated in ruling on Objection # 12, Objection # 24 is also DENIED.

To the extent that Gilmore objects based on lack of relevancy as to the charges against him and on the basis that the evidence is unfairly prejudicial, the Court finds that the evidence is clearly relevant evidence as to Stevens and that any prejudice to Gilmore from a spillover effect can be addressed with limiting and/or jury instructions. Thus, Objection # 24 on the bases of relevance and prejudice is also DENIED.

### b. Stevens' Joining of the Motion in Limine

Stevens has "adopt[ed]" Gilmore's Motion in Limine and states that "for the same reasons" in Gilmore's Motion in Limine, he moves to exclude certain portions of the recordings at trial.

First, to the extent that Stevens objects to any of the specific portions to which Gilmore objected, the Court has resolved the relevance and hearsay issues as set forth above. To the extent that Stevens objects to his own statements, the Court notes that "*Crawford* certainly prohibits the introduction of a co[-]defendant's out-of-court testimonial statement against the other defendants in a multiple-defendant trial, [but] does not signal a departure from the rules governing the admit-

tance of such a statement against the speaker-defendant himself, which continue to be provided by *Bruton, Richardson* [*v. Marsh,* 481 U.S. 200, 202–03, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) ], and *Gray* [*v. Maryland,* 523 U.S. 185, 188, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998) ]." *Ramos–Cardenas,* 524 F.3d at 609–10 (citations omitted). An out-of-court statement made by a defendant is typically classified under the Federal Rules of Evidence as an admission, not hearsay, and may be admitted against him. *See* FED.R.EVID. 801(d)(2). Thus, Stevens' own statements may be admitted at trial against him.

The Court now turns to Stevens' specific objections. With regard to Objections # 1–5 & 7,[6] the Government has explained what evidence will have been provided to the jury at the time the recording is played, why those portions are relevant, and why they are not unduly prejudicial to Stevens. Without a specific response by Stevens, the Court finds that the Government has sufficiently established the admissibility as to these portions of the recordings and accompanying transcripts. The Court further notes that Objection # 1, as it relates to Exhibit 20T, p. 53, is moot because the Government will not play this portion of the recordings.

With regard to Stevens' Objection # 6 to Exhibit 145T, p. 5, the Government argues that the CW and Gilmore are discussing the fact that Dr. Reddix is running for a position on the Ouachita Parish Police Jury. During the conversation, the CW asks whether Stevens supports Dr. Reddix. Gilmore responds that Stevens "is behind [her], me and her and [Stevens], we talked at the Denver Gardner Thomas." [Exhibit 145T, p. 5, 1.3]. The Government contends that Gilmore's statement is not hearsay, nor does its introduction into evidence violate the Confrontation Clause.

For the reasons previously discussed, the Court agrees with the Government that the statement is non-testimonial and does not violate the Confrontation Clause. Further, to the extent that Stevens contends that the statement is hearsay, the Court has previously agreed with the Government that the statement falls under the co-conspirator exception to the hearsay rule and thus is admissible. Accordingly, this objection is also DENIED.

For the reasons set forth above in ruling on Gilmore's specific objections and for these additional reasons, the Motion in Limine is also DENIED as to Stevens.

### 2. Motion for Reconsideration

In the alternative to granting his Motion in Limine, Gilmore moves the Court to reconsider its ruling on his previously filed Motion to Sever. Based on the redactions voluntarily undertaken by the Government, the Court's ruling on the remainder of the Motion in Limine, and for those additional reasons stated in the Court's previous Ruling, the Court finds that a joint trial will not prejudice the rights of

---

**6.** The pertinent transcript cites are as follows:

Objection # 1 Exhibit 20T, pp. 5, 6, 21, 23, 24, 27, 41, 42, 51, 53

Objection # 2 Exhibit 43T, pp. 4, 5

Objection # 3 Exhibit 80T, pp. 4, 13, 14

Objection # 4 Exhibit 85T, pp. 3, 4

Objection # 5 Exhibit 108T, p. 4

Objection # 7 Exhibit 150T, p. 10

Defendants. Gilmore's Motion for Reconsideration is DENIED.

### 3. Stevens' Objection to Admission of Transcripts and Request that the Entire Recordings Be Played for the Jury

Finally, the Court turns to Stevens' Pre–Trial Memorandum [Doc. No. 65]. Stevens joined Gilmore's Motion in Limine. However, to the extent that the Court has determined that the objected-to portions of the recordings are admissible, Stevens raises two related issues: the admissibility of the transcripts of the recordings prepared by the Government and the admission of the recorded conversations in their entirety.

### a. Admission of the Transcripts

■ First, citing *United States v. Onori,* 535 F.2d 938, 946–49 (5th Cir.1976), Stevens notes that transcripts are admissible to aid the jury in understanding recordings; however, he argues that the recordings in this case are "crisp and clear" and that jurors are aided by video in identifying the speakers. Therefore, Stevens argues that transcripts should not be presented to the jury unless the Government shows that the portions to be presented are inaudible or difficult to hear.

The Government admits that the recorded conversations in this case are of good quality, but contends that they are not perfect or easy to comprehend. The Government notes Assistant United States Attorney Griffing, Griffing's legal assistant, FBI Special Agent Chesser, and the CW spent many weeks working individually and collectively to perfect the transcripts, and Defendants were provided those updated transcripts during the past several months. The Government notes the fact that several conversations take place in a busy restaurant, during a couple of the calls there is road noise, the CW and Defendants frequently talk over each other,

and the quality of the recorded conversation depends on the distance between the recording device and the speakers. Finally, the Government points out that the courtroom in Monroe has less-than-ideal acoustics, in part because of the large size of the room and the noise of the air conditioner. Thus, citing Fifth Circuit Pattern Jury Instruction 1.42, the Government contends that the transcripts should be provided to the jury to aid them while they listen to the recordings and watch the videos.

On the first issue, as the Government points out, Fifth Circuit Pattern Jury Instruction 1.42 provides that transcripts may be admitted, in the Court's discretion, "for the limited and secondary purpose of aiding [the jurors] in following the content of the conversation as [they] listen to the tape recording." However, the jurors are "specifically instructed that whether the transcript correctly or incorrectly reflects the content of the conversation or the identity of the speakers is entirely for [them] to determine based upon [their] own evaluation of the testimony [they] have heard concerning the preparation of the transcript, and from [their] own examination of the transcript in relation to [their] hearing of the tape recording." *Id.* The jury is told that they should disregard the transcript if they "determine that the transcript is in any respect incorrect or unreliable." *Id.*

"[T]he Fifth Circuit has recognized that it may be of help to the jury to allow it to read a transcript while listening to a tape recording." *United States v. Murray,* 988 F.2d 518, 525 (5th Cir.1993) (citing *United States v. Wilson,* 578 F.2d 67, 69 (5th Cir.1978)). "Thus, transcripts are admissible to aid the jury in understanding a recording, **including** cases in which 'the transcript may be helpful either to identify the speakers or to understand portions

which are difficult to hear.' " *Id.* (emphasis added) (quoting *Wilson,* 578 F.2d at 69) (other citations omitted). Thus, there is no requirement that the transcripts be admitted only if the recordings are difficult to hear. In the exercise of its discretion, the Court finds that the transcripts should be admitted to aid the jurors as they listen to the audio recordings and view the videotaped recordings. The Court will read Fifth Circuit Pattern Jury Instruction 1.42 before the playing of the first recording and as part of the final jury instructions.

### b. Admission of the Recorded Conversations in Their Entirety

Stevens also argues that the recorded conversations should be played in their entirety under Federal Rule of Evidence 106, the Rule of Completeness.[7]

▆▆▆ The Government notes the inconsistency of Stevens' positions in adopting Gilmore's Motion in Limine and then seeking to have the Government play the entirety of the recordings. The Government then argues that it has chosen only, in its view, the relevant portions of the recordings to be played and that many of the recorded conversations contain irrelevant discussion about Stevens' job at Graphic Packaging and the ongoing contract negotiations, the health of another Monroe City Councilman, idle conversation between the CW and waitstaff at the Brandy House, and some conversation about other criminal activity, including other individuals the CW has bribed and other individuals who have bribed other public officials. The Government argues that if the Government plays a recording which is taken out of context, Stevens "is free to play the entire relevant portion himself when he

cross examines the CW." [Doc. No. 71, p. 5 (citation omitted)].

> Federal Rule of Evidence 106 provides: When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

The purpose of Rule 106 is to "guard[ ] against admission into evidence of truncated statements likely to present an out-of-context picture to the jury." *United States v. Jones,* 663 F.2d 567, 571 (5th Cir.1981). However, Rule 106 "restricts a requirement of completeness by the qualification that the portion sought to be admitted must be relevant to the issues, and only the parts which qualify or explain the subject matter of the portion offered by the opponent need be admitted." *United States v. Crosby,* 713 F.2d 1066, 1074 (5th Cir.1983).

In this case, the Government contends that it has identified and limited the recordings it will play at trial to those which are relevant. Stevens contends that the remainder of the recordings should also be played, but he has failed to show that **all** of the remaining portions are relevant and that they either qualify or explain the subject matter of the portions which the Government intends to offer into evidence. Based on the Court's review of some of the portions already stricken by the Government, they appear to be entirely irrelevant to these proceedings. Therefore, Steven's objection under Rule 106 is DENIED, subject to his right to re-urge the playing of any additional recordings during cross-examination if they are relevant and either

---

7. In his memorandum, Stevens' counsel admits that he "has not yet had a chance to review each recording to determine what was left out," and that, "[u]pon doing so, counsel

for Mr. Stevens will supplement ... with more specific objections." [Doc. No. 65, p.

qualify or explain the portions offered by the Government.

## C. CONCLUSION

For the foregoing reasons, Gilmore's Motion for Reconsideration [Doc. No. 63] is DENIED.

Gilmore's Motion in Limine [Doc. No. 64], joined by Stevens [Doc. No. 82], is also DENIED.

Stevens' objection to the presentation of transcripts to the jury and request that the recordings be submitted in their entirety are also DENIED.

3]. As of today's date, no supplemental memorandum has been filed.